Christian S. Molnar, Esq. (SBN 177665)
Tyler S. Summers, Esq. (SBN 331515)
**ARENDSEN CANE MOLNAR LLP**
315 S. Beverly Drive, Suite 320
Beverly Hills, California 90212
Telephone: (310) 299-8630
Facsimile: (310) 820-9926
Email: cmolnar@arendsenlaw.com
         tsummers@arendsenlaw.com

Attorneys for Plaintiff JASHA TULL, an individual.

## THE UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASHA TULL, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> MICHAELA HIGGINS aka CAELI LA, an individual; and DOES 1 through 10 inclusive, <br><br> Defendants. | Case No.:  3:21-cv-01566 <br><br> **COMPLAINT FOR MONETARY DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF:** <br><br> **(1) DEFAMATION - LIBEL;** <br> **(2) CIVIL HARASSMENT IN VIOLATION OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 526.7; and** <br> **(3) CIVIL STALKING IN VIOLATION OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1708.7.** <br><br> **[DEMAND FOR JURY TRIAL]** |

     **COMES NOW**, Plaintiff JASHA TULL, an individual (hereinafter "Plaintiff", "Jasha", or "Jasha Tull") alleges as follows:

## THE PARTIES

     1.     Plaintiff Jasha Tull, is an individual residing within the City of Princeton, County of Mercer, State of New Jersey. He is an electronic musician and producer who performs under the stage name "Space Jesus."

     2.     Upon information and belief, Defendant Michaela Higgins, also known as "Caeli La" (hereinafter "Defendant", "Caeli", "Ms. Higgins" or "Michaela Higgins") is an individual primarily residing in the City of Healdsburg, County of Sonoma, State of

California and, upon information and belief, residing partially in the City of Port Washington, County of Nassau, State of New York. Plaintiff is further informed and believes that at all times mentioned herein, Defendant Higgins is or was acting under and/or utilizing the following pseudonyms on the Instagram social media platform: @caelila; @caelislaysdemons; @evidenceagainstspacejesus; @xxeyesaxx; and @fuckthekkkops. Plaintiff is further informed and believes that at all times mentioned herein, Defendant Higgins is or was acting under and/or utilizing the following pseudonyms on the Twitter social media platform: @caelila and @caeli_slays. Plaintiff is informed and believes that Defendant Higgins was also acting under and/or utilizing the pseudonym or screen name "@sensualintelligence" on the "onlyfans.com" platform.

3. Plaintiff is ignorant of the true names and capacities of Defendants, whether individual, corporate, associate or otherwise of Defendants named as Does 1 through 10, inclusive, in this Complaint, and therefore sues such Defendants, and each of them, by such fictitious names. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of these fictitiously named Defendants if and when they are ascertained. Plaintiff alleges that each of the Defendants sued herein as Does 1 through 10, inclusive, are in some manner legally responsible, in whole or in part, and liable to Plaintiff as hereinafter alleged.

## JURISDICTION AND VENUE

4. The Court has personal jurisdiction over Defendant because they are domiciled in California, resided in California during most or all material times relevant hereto, and contacted Plaintiff while residing or present in the State of California, and as such voluntarily subjected themselves to the laws of this state.

5. This Court has subject matter jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of Seventy-Five Thousand and No/100 Dollars ($75,000) and there exists complete diversity of citizenship between the opposing parties in this action.

6.     Venue is proper in this Court in accordance with 28 U.S.C. § 1391(b)(1) because Defendant Michaela Higgins/Caeli La primarily resides in the City of Healdsburg, County of Sonoma, State of California.

## STATEMENT OF THE CASE

7.     Jasha Tull has endured four and a half years of defamation, harassment, and stalking from and directed by Michaela Higgins a/k/a Caeli La, and by this action seeks to reclaim his life and clear his name. Michaela Higgins/Caeli La has weaponized social media and our current cultural climate to exert control over Jasha Tull's life and career. She has done so by targeting his professional contacts and spreading baseless accusations as broadly as she possibly can, upon information and belief, with help from others.

8.     Jasha Tull has sought to resolve any disputes with Michaela/Caeli amicably. He has spoken publicly to answer these false accusations. He has even publicly posted their mutual communications which, as included here, show a pattern of manipulation and threats, including violent threats, towards him and members of his family. None of these efforts have ended the harassment or lead to a retraction of defamatory statements.

9.     Jasha Tull is thus forced to make a choice – to retreat quietly in a tacit admission of things he did not do, or pursue his rights under the law. He has chosen the latter. This complaint and attached exhibits, including declarations under oath, reveal the years of animosity, manipulation, and lies he and his family have endured. While legal action is an unfortunate last resort, it is one he makes trusting that the truth will be revealed.

## FACTUAL BACKGROUND

10.     This Complaint arises from the facts related to Plaintiff Tull's former relationship with Defendant Higgins/La, which in turn has fomented her persistent animosity and wrongful acts towards Plaintiff, causing him vast emotional and pecuniary injury.

11.     Plaintiff incorporates herein as though fully set forth by this reference, the sworn Declaration of Jasha Tull (attached herein as **Exhibit "A"**).  Plaintiff further incorporates herein as though fully set forth by this reference, the sworn Declarations of Dr. Lekha Tull, DDS. (attached herein as **Exhibit "B"**) and Dr. Herman Tull, Ph.D. (attached herein as **Exhibit "C"**).

12.     Plaintiff Jasha Tull was born and raised in Princeton, New Jersey by his parents, Dr. Lekha Tull DDS. and Dr. Herman Tull, Ph.D. with his younger brother, Dr. Janak Tull, DMD.  Jasha Tull is a musical artist and producer who performs under the stage name "Space Jesus", and has done so for over a decade.  A leading performer in the electronic music subgenre known as "Bass music", Jasha Tull has performed at numerous festivals, including Electric Daisy Carnival, Bonnaroo, and Lollapalooza.  Plaintiff's music has accumulated tens of millions of plays on the music streaming platform Spotify, with over a quarter of a million individuals listening to his music per month, on that platform alone as of March 2021.  Jasha has regularly if not exclusively lived with his parents, including during busy and lucrative stretches of touring, as a way to stay close to family and maintain a consistent base through heavy periods of travel.

13.     In or about June 2016, Jasha Tull and Michaela Higgins/Caeli La became romantically involved and started an intimate relationship.  On or about the week of July 3, 2016, Jasha Tull invited Michaela Higgins a/k/a Caeli La to stay with him and his family at their family home in Princeton, New Jersey, before they spent several days at the family's vacation home in Harvey Cedars, New Jersey.

### ***Defendants' Persistent and Escalating Campaign of Harassment, Defamation, Threats and Cyber-Stalking and Bullying***

#### *A Storm on the Horizon*

14.     Jasha Tull and Michaela Higgins/Caeli La's romantic relationship concluded in the late summer and early fall of 2016. While Jasha Tull was attempting to conclude their romantic relationship, Michaela Higgins a/k/a Caeli La became extremely emotionally distraught, volatile, and verbally abusive.

15.    On or about the week of September 4, 2016, Michaela Higgins a/k/a Caeli La suddenly appeared unannounced, uninvited and without warning at Plaintiffs' vacation home in Harvey Cedars. Michaela Higgins/Caeli La screamed that she and Jasha Tull were meant to be together, and that **if he did not agree to renew their relationship, that she would seek to destroy him personally and professionally**. Jasha Tull engaged with Michaela Higgins/Caeli La to diffuse the situation, and Plaintiff and his family invited her into their home. Jasha and his family cooked for her, Dr. Lekha Tull secured a booking change to an airline ticket for Michaela Higgins/Caeli La to return to Portland, Oregon, and Dr. Lekha Tull and Dr. Herman Tull secured Michaela/Caeli transportation to the airport shortly thereafter. (See **Exhibit "B"** (Declaration of Dr. Lehka Tull, DDS.); see **Exhibit "C"** (Declaration of Dr. Herman Tull, Ph.D.); see **Exhibit "D"** (Declaration of Pua Lei Pilai).)

16.    The gravity and intensity of this encounter was so significant that the Tulls' neighbors recall and ask about the incident to this day, and Jasha Tull's aunt Pua Lei Pilai remembers Michaela Higgins/Caeli La's disruptive and furious statements vividly. (See **Exhibit "D"** (Declaration of Pua Lei Pilai).)

17.    In the period following the end of the relationship and continuing through the present day, Michaela Higgins/Caeli La has undertaken a campaign of harassing, defaming, bullying, threatening, cyber-stalking and intimidating Plaintiff, as well against his parents, Dr. Lekha Tull DDS. and Dr. Herman Tull, Ph.D., and their friends. A true and correct copy of written communications referenced in this Complaint between Jasha Tull and Michaela Higgins/Caeli La is attached as **Exhibit "E"** (Jasha and Michaela – Written Communications).

18.    Michaela Higgins a/k/a Caeli La continued to be extremely distraught by the end of her relationship with Jasha Tull, stating that she struggled to sleep or eat, felt "traumatized" and "triggered", and upset that the relationship was "disposable." She described having "a sever panic attack" (sic) and self-diagnosed herself with "PTSD."

Michaela/Caeli said to Plaintiff: "Fuck you for treating it and me like it was worthless." (See **Exhibit "E"**.)

19.    Over <u>eighteen months later</u>, on April 27, 2018, Defendant Michaela Higgins/Caeli La sent Plaintiff several text messages, including:

a.    "Good luck ever finding a connection like what we had again. Fuck you for treating it and me like it was worthless"

b.    "It was a really special and rare find, not the kind of thing most people treat so carelessly but then again most people display the capacity to feel empathy, and you do not"

c.    "**One day you will regret fucking up the chance we had to heal and be friends agin**. You will realize one day that it's not so easy to find people who you have a connection with, so you shouldn't treat that connection like a worthless piece of shit".  (See **Exhibit "E"**.)

*<u>Violent Threats, Admissions to Threats, and Wrongful Accusations</u>*

20.    Beginning on or about early 2017, Michaela Higgins a/k/a Caeli La began rapidly escalating her menacing tone while communicating with Plaintiff, making violent threats and statements which put Plaintiff and his family in fear and apprehension that Michaela Higgins a/k/a Caeli La and/or a third-party directed or solicited by her were capable of causing him and his family serious physical harm.   These threats and statements included, by way of illustrative, but non-exhaustive example:

**a.**    **"I fucking hate you";**

**b.**    **"I wish you were dead";**

**c.**    **"I hate you now";**

**d.**    **"You are my enemy now"; and**

**e.**    **<u>"That makes me want to fucking murder you</u>."**  (See **Exhibit "E"** (emphasis added).)

21.    On or about November 2018, Plaintiff granted Ms. Higgins/Caeli's request to meet in person, which he hoped would deescalate the situation despite some skepticism

**COMPLAINT FOR MONETARY DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF**

given her previous statements. They met in or around Echo Park, California, and spoke for some time. Following this meeting, Ms. Higgins/Caeli told him she "totally underst[ood] not wanting to talk moving forward" and that "[she] underst[ood] why [he] did the things [he] did and [she forgave] him completely." (See **Exhibit "E"**.) Plaintiff believed this would be the conclusion of either any animosity or communications between him and Ms. Higgins/Caeli.

22. Between the fall of 2016 and the present, Ms. Higgins/Caeli has not just made, but acknowledged making, various threatening statements against Plaintiff. These acknowledgments included:

a. "I guess I need some reassurance that this is something you would have wanted to do **even without the threat**";

b. "I need to know if you would have made an effort to make amends **if I hadn't threatened you**";

c. "Can you take some time to let me know… would you have reached out **if I didn't make that threat**";

d. "I have no reason to terrorize you anymore."

(See **Exhibit "E"** (emphasis added).)

23. This acknowledgment has extended to conduct at the heart of this complaint, when Ms. Higgins stated: "Karma's a bitch . . . wrongly accuse someone of sexual abuse and never apologize for it, and **you may end up getting wrongly accused yourself**." (See **Exhibit "E"**.) Plaintiff has repeatedly attempted to either deescalate or disengage, and Defendant Michaela Higgins/Caeli La has refused to do so.

### *Unstable and Inconsolable*

24. As Plaintiff continued trying to deescalate or disengage with Defendant Michaela Higgins/Caeli La over time, her accusations against and descriptions of Plaintiff have grown simultaneously more intense and inexplicable. She would threaten to "expose" Plaintiff unless he showed some unknown level of contrition and accountability. When Plaintiff would ask her to explain what he did and how he could

resolve this animosity to cease communications, she would become upset and accusatory while failing to provide any clear answers.

25. On or about December of 2018, Plaintiff agreed to speak on the phone with Defendant Michaela Higgins/Caeli La regarding her ongoing concerns and animosity, which Plaintiff had previously believed had been resolved. Plaintiff asked Defendant Michaela Higgins how the ongoing issues between them could be resolved and contact discontinued. Defendant Michaela Higgins referred generally to "accountability" and wrongfully asserted that Plaintiff had agreed to a supposed open-ended agreement where they would communicate indefinitely at her sole discretion. Plaintiff asked Defendant Michaela Higgins what specific instances of alleged harm had been unaddressed and how Plaintiff could resolve them, and instead Defendant Michaela Higgins became audibly upset, crying, and yelling. Plaintiff expressed frustration that she now demanded what amounted to an indefinite agreement to communicate at her sole discretion. On this call, Defendant also told Plaintiff:

a. **"I'm not trying to destroy you, I love you."**

b. **"I love you so much, you have no idea."**

c. **"But I don't hate you, I will always love you . . . I will always want you to be ok and good and want the best and I just I don't want it to end like that"**

(See **Exhibit "A"**.)

26. Defendant Michaela Higgins/Caeli La then inexplicably concluded this conversation by calling Plaintiff a "**piece of shit.**" (See **Exhibit "A"**.)

### *Caeli Makes Good on Her Threats*

27. On or about 2019, Defendant Michaela Higgins/Caeli La began reaching out to C3 Management, who at the time represented Plaintiff in his career as an electronic musician and producer. In these emails, she bcc'd Plaintiff's father, Dr. Herman Tull. A true and correct copy of these emails is attached as part of **Exhibit "F"** (Email and Social Media Communications to Herman Tull from Michaela Higgins).

28.     One email to Plaintiff's management team, dated January 22nd, 2019, included a threat to promote screenshots of either unattributable or second-hand accusations that Plaintiff had knowingly engaged in forms of sexual misconduct, stating Defendant Michaela Higgins/Caeli La would "send these screenshots to all the festivals and events that booked" Plaintiff if his management did not speak to her about the "accountability" Plaintiff had supposedly not yet taken.  (See **Exhibit "F".**)

29.     Another email to Plaintiff's management team, dated January 31, 2019, Defendant Michaela Higgins/Caeli La stated that "there is nothing you can say that would make me believe he has actually taken any personal accountability", and stating that Plaintiff had somehow been "continuing to terrorize" her "every time I have given him an opportunity to make things right."  Defendant Michaela Higgins/Caeli La falsely claimed that Plaintiff had "admitted" to abusing her, that Plaintiff had threatened to harm her professionally, and that Plaintiff had told her and others that she had threatened my father.  Defendant Michaela Higgins further demanded "a written and verbal statement from Jasha admitting that I never threatened his dad, and promising to never contact me again."  (See **Exhibit "F".**)

30.     Another email to Plaintiff's management team, dated February 2, 2019, Defendant Michaela Higgins/Caeli La stated that "If I do not hear from you in the next few days, I will reach out to Lekha, and forward her the emails I sent you, explaining everything. If she is also unresponsive or unhelpful, then I will reach out to everyone who currently works with Jasha is [sic] any capacity."  Immediately thereafter, Defendant Michaela Higgins/Caeli La also stated that "I will reach out to everyone who currently works with Jasha *in any capacity collaborators, promoters, sponsors, etc- and I will post this email thread in every relevant FB group as well." (See **Exhibit "F".**)

31.     On February 5, 2019, Plaintiff's manager Erik Gietzen responded to these emails after speaking to Plaintiff and his father. Erik conveyed that "Both Jasha and his dad agreed per your suggestion, that we cut contact here, and both he and his dad want to see this positively respond for everyone."  (See **Exhibit "F".**)

**COMPLAINT FOR MONETARY DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF**

32.　In emails dated February 7, 2019, Defendant Michaela Higgins/Caeli La told Plaintiff's management team that "If you do not have any evidence of me doing anything even remotely similar, and you make any mention of trying to get me to sign anything, or do anything for him in return, then the phone call will end immediately, and I will go to plan B." (See **Exhibit "F"**.)

33.　On or about February 15, 2019, Dr. Herman Tull received an email message from Michaela Higgins, which stated in part:

> "*Herman and Jasha should know that if either one of them had simply responded to my email and admitted that I never made a threat, none of this would have happened. . . They should know what an incredible shitstorm has been caused by their lack of response, and that it could have all been avoided if they had simply acknowledged my email.*" (See **Exhibit "F"** (italics added).)

34.　On June 25, 2019, Michaela Higgins/Caeli La emailed Dr. Herman Tull unprompted, falsely accusing Jasha of having "severe" addictions to various illegal and legal but controlled medications, including, ketamine, cocaine, alcohol, and Adderall. She further falsely accused Jasha of having a "psychotic break" in which he attacked a woman named Christine at the music festival Bonnaroo in June of 2019. Her email implored Drs. Herman and Lekha Tull to "get him help", despite Jasha's lack of substance abuse issues, and lack of this event ever taking place. (See **Exhibit "F"**.)

35.　On or about June 25, 2020, Defendant Michaela Higgins/Caeli La send a barrage of text messages to Dr. Lekha Tull, variously accusing Dr. Lekha Tull of refusing to believe her and accusing Jasha Tull of having substance abuse issues. A true and correct copy of some of the communications between or references to Dr. Lekha Tull and Michaela Higgins a/k/a Caeli La are attached as part of **Exhibit "G"** (Communications Between or Referencing Dr. Lekha Tull and Michaela Higgins).

/ / /

/ / /

*Malign Intent and Social Media*

36.     Upon information and belief, in the summer of 2020, an Instagram account with the name and/or 'handle' "@evidenceagainstspacejesus" was created on the platform.

37.     The "@evidenceagainstspacejesus" Instagram account formerly stated that it was controlled by the Instagram account "@caelila", then later by "@caelislaysdemons" which, upon information and belief, is the personal Instagram page of Michaela Higgins. A true and correct copy of social media posts which purport to establish control is attached as part of **Exhibit "H"** (Admissions of Control of Social Media Accounts & Objectionable Posts).   Upon information and belief, the "@evidenceagainstspacejesus" Instagram account is under the control of Michaela Higgins and Doe defendants.

38.     The Twitter account "@caelila", upon information and belief, is the personal Twitter account of Michaela Higgins.  The Twitter account "@caelila" has also admitted to controlling the "@evidenceagainstspacejesus" Instagram Account.  (See **Exhibit H**.)

39.     Also attached as part of **Exhibit "H"** are true and correct copies of defamatory and other objectional social media postings of Michaela Higgins and Doe Defendants, addressed individually below.

40.     The "@evidenceagainstspacejesus" Instagram account posts images, writes comments, and hosts comments which variously and falsely accuse Plaintiff of sex crimes and other misconduct, including knowingly furnishing drugs and alcohol to minors, and variously of sexual and emotional abuse. Seemingly all of these false accusations are anonymous, second-hand, or both.

41.     On June 20, 2020, "@evidenceagainstspacejesus" Instagram account posted numerous screenshots from the Twitter account "@caelila."  The first stated that Plaintiff "refused to get off, kept pinning me down, and kept going" while he and Defendant were having sex.  Plaintiff in no way restrained or forced Defendant to continue to have sex against her will.  In the next screenshot, Defendant asserts Plaintiff stated "'what if I told

**COMPLAINT FOR MONETARY DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF**

you guys I was inside of her right now?'" Plaintiff has no recollection of making such a statement, and the several seconds the embarrassing encounter lasted makes such a statement highly suspect.

42. On July 19, 2020, the "@evidenceagainstspacejesus" Instagram account stated that "I wrote this statement almost exactly a year ago, on July 10th, 2019." The 'statement' are screenshots of text describing a series of alleged incidents. Upon information and belief, the 'statement' is that of Defendant Michaela Higgins/Caeli La. The statement first alleges that she "was not given the opportunity to consent to unsafe sex the first time." Plaintiff denies ever receiving a withdrawal or denial of consent from Defendant Michaela Higgins, verbal or otherwise. The statement next alleges that, while Plaintiff and Defendant Michaela Higgins were having sexual intercourse, that Defendant Michaela Higgins "immediately tried to push" Plaintiff off of her, but that Plaintiff wouldn't stop, and then Plaintiff told three witnesses "'what if I told you guys I was inside of her right now?'" Plaintiff in no way restrained or forced Defendant Michaela Higgins to continue to have sex against her will, and Plaintiff has no recollection of making such a statement. The several seconds the embarrassing encounter lasted makes such a statement highly suspect.

43. On July 19, 2020, the "@evidenceagainstspacejesus" Instagram account stated that "Jasha has now fully admitted to one of the main allegations I initially contacted them about (drinking, doing drugs and having sex with a 17 yr old- not in Oklahoma, as he claimed, but actually in Knoxville, where the age of consent is 18)." Plaintiff has never admitted to knowingly furnishing illicit substances to minors or to committing statutory rape.

44. On August 5th, 2020, the "@evidenceagainstspacejesus" Instagram account stated that "Jasha raped me." Upon information and belief, Defendant Michaela Higgins/Caeli La and/or Doe Defendants are alleging that Plaintiff raped Defendant Michaela Higgins/Caeli La. This is a lie, Plaintiff has never raped Defendant Higgins/La.

45.    On August 5th, 2020, "@evidenceagainstspacejesus" stated that Plaintiff had consumed alcohol and other illicit substances with, then statutorily raped a 17-year-old girl.  This is false, Plaintiff has never knowingly furnished illicit substances to minors or committed statutory rape.

46.    Upon information and belief, the Instagram account "@xxeyesaxx" is under the control of Defendant Michaela Higgins/Caeli La and Doe Defendants.

47.    On or about September 12, 2020, the Instagram account "@xxeyesaxx" posted a comment on a photo posted on Dr. Lekha Tull's personal Instagram account. Upon information and belief, the comment described Plaintiff as Lekha Tull's "r*pist (sic) p*do (sic) son".  This is a both false and a lie, Plaintiff is neither a rapist nor a pedophile.

48.    On or about June 26, 2020, the Twitter account "@caelila" stated "You're an actual, factual psychopath @spacejesus".  This is false and a lie, Plaintiff is not a psychopath.

49.    On or about June 29, 2020, the Twitter account "@caelila" stated that "Whatever personality disorder Trump has (is it psychosis? megalomania? just straight up soul-less?), jasha has it too. They operate the exact same way."  This false and a lie, Plaintiff does not have a personality disorder.

50.    On or about July 3, 2020, the Twitter account "@caelila retweeted a tweet from "@Dmoney0101" stating "So disheartening to see @bassnectar @spacejesus and @NahkoBear exposed as sexual predators all in one week…"  "@caelila"'s adoption and promotion of this statement amounts to an assertion that Plaintiff is a sexual predator, which is false and a lie.

51.    On or about July 4, 2020, the Twitter account "@caelila" tweeted "You think I'm just as bad as a serial predator and rapist at this point?"  This statement was made in response to a tweet referring to Plaintiff and amounts to an assertion that Plaintiff is in fact a serial predator and rapist.  This is false and a lie, Plaintiff has never raped anyone and is not a sexual predator.

52.     On or about July 5, 2020, the Twitter account "@caelila" retweeted a tweet from "@deadsoonshawty" stating "burnt all our pedophile merch last night :) FUCK YOU @spacejesus".  Defendant Michaela Higgins/Caeli La's retweet via "@caelila" amounts to an adoption and assertion Plaintiff is a pedophile, which is false and a lie.

53.     On August 5, 2020, the Twitter account "@caelila" stated that "@yhetimusic was not there the night Jasha raped me, as he claims."  This is a lie, Plaintiff has never raped Defendant Michaela Higgins/Caeli La.

54.     On August 9, 2020, "@caelila" retweeted a tweet from "@shambhalaaa888" stating that Plaintiff had raped Defendant Michaela Higgins/Caeli La.  "@caelila"'s adoption and promotion of this statement amounts to an assertion that Plaintiff raped Defendant Michaela Higgins/Caeli La, which is a lie.

55.     On September 11, 2020, "@caelila" stated that Plaintiff is a "serial rapist and predator." Plaintiff has never raped any one in his life.  The account further stated that "37 other victims came forward after I created the page, including some underaged girls."  This is false and a lie, Plaintiff has not raped or sexually abused anyone, let alone dozens of other persons of any age.

56.     Upon information and belief, the Instagram account "@caelila" is the personal Instagram account of Michaela Higgins.

57.     On or about November 29, 2020 Michaela Higgins/Caeli La and/or Doe Defendants publicly posted a photograph of Michaela carrying a firearm, and later on December 10, 2020, a photograph with her location stated to be in Long Island, New York, approximately fifty miles from Plaintiff's family's homes in Princeton, New Jersey and Harvey Cedars, New Jersey.  A true and correct copy of these social media posts are attached as part of **Exhibit "I"** (Michaela Higgins with Firearm and in Proximity of Plaintiff(s)).  In the November 29, 2020 post, Defendant Michaela Higgins/Caeli La and/or Doe Defendants publicly posted a photograph of Defendant Michaela Higgins/Caeli La holding a long gun with a picatinny rail and identifying herself as a member of the Socialist Rifle Association (SRA).  This public post and the SRA as an

organization promote the concept of "mutual aid", in which individuals assist others reciprocally in accordance with their particular needs. While the concept is longstanding and associated with material needs, the relation of mutual aid and firearms has necessarily led to concerns from Plaintiff and his family that such supposed 'assistance' could come in the form of individuals acting violently against their them. On or about December 10, 2020, Defendant Michaela Higgins and/or Doe Defendants posted an image of an individual who is purportedly Defendant Michaela Higgins that is geotagged in Long Island, only about fifty miles from the Tull family home. (See **Exhibit "I".**)

*The Frightening Scope of False Statements*

58. Upon information and belief, the Instagram account "@evidenceagainstspacejesus" has more than 5,800 followers, and in the past has had more than 6,100 followers.

59. Upon information and belief, Instagram's various algorithms which organize and promote content include the promotion of accounts and content with a degree of separation from the initial account, in effect meaning that as a platform Instagram promotes the "@evidenceagainstspacejesus" account not only to its followers, but to the accounts who follow *those followers*.

60. Upon information and belief, the average number of followers of a personal Instagram account is about 150.

61. Upon information and belief, the total exposure of posts and comments stemming from the "@evidenceagainstspacejesus" could reach <u>870,000 Instagram accounts</u>, if not significantly higher, constituting a vast mechanism for the distribution of her false and baseless accusations and harassing statements.

62. On or about December 2020, Jasha Tull through his counsel transmitted letters to Twitter and Facebook (as owner of Instagram) which, among other wrongful acts, described the harassment and defamation which Dr. Lekha Tull and Dr. Herman Tull have endured from Michaela Higgins and, upon information and belief, Doe

defendants.  To date, these letters have been ignored by both platforms, despite the letters' careful accounting and dozens of pages of documentation.

63.     Social media platforms have little if any incentive to unilaterally remove content which their users have been found civilly liable for posting.  In *Hassell v. Bird*, the California Supreme Court determined that a removal order sent to Yelp to remove certain defamatory reviews was unlawful under Section 230 of the Communications Decency Act.  5 Cal.5th 522, 540-544 (2018).  Irrespective of the posts' unlawful nature, the platform was not obligated to comply with a court order to remove them.  Any such relief from the social media platforms who host this offending material will be largesse when, if ever, or rarely given.

## FIRST CAUSE OF ACTION

### (Defamation - Libel – Plaintiff Jasha Tull Against Defendant Michaela Higgins and Does 1-10, inclusive)

64.     Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs 1 through 63 as though set forth fully herein.

65.     On information and belief, at all times Defendant Michael Higgins/Caeli La and Doe Defendants 1 through 10, inclusive, maintained and/or controlled the Instagram account "@evidenceagainstspacejesus."

66.     Upon information and belief, Defendants, and each of them, used this and various other social media accounts account to make statements about and referencing Plaintiff which they knew, or had reasonable cause to believe, were false and defamatory, whether by personal knowledge or by reckless disregard of the statements' falsity.

67.     Defendants, and each of them, have made public statements on social media platforms stating that Plaintiff has committed various criminal or otherwise wrongful acts, including rape, statutory rape, sexual abuse, emotional abuse, and knowingly furnishing illicit substances to underage persons.  Defendants knew, or had reasonable cause to believe, that Plaintiff had not done so, as Defendants knew, or had reasonable cause to believe, that Plaintiff did not commit said acts.  Despite this, Defendants, and

1  each of them, have continued to make these statements which they know or had
2  reasonable cause to believe were false.

3      68.    These statements tend to and have directly injured Jasha Tull as an
4  individual and as a performing artist and producer, by impugning his character and
5  accusing him of criminal activity, including his fans and members of audiences for which
6  he performs, which amplifies their seriousness and propensity for causing reputational
7  harm to him and his business as an artist and producer.

8      69.    As a proximate result of the foregoing, Plaintiff has suffered damages,
9  including reputational harm, economic damages, and noneconomic damages, in an
10 amount according to proof at trial.

11     70.    Defendants' conduct has imposed significant reputational harm on Plaintiff,
12 both professionally and socially.  Plaintiff maintained a large network of professional
13 contacts as one of the leading performers in the subgenre of electronic music in which he
14 performs, developed over a decade.  These formerly reliable sources of performance
15 opportunities, creative collaboration, and professional networking have all but collapsed
16 since Defendants' propagation of the false and defamatory statements pertaining to
17 Plaintiff.  Plaintiff has been told discretely by numerous contacts that these statements
18 are the entire reason for the reduction in Plaintiff's capacity to collaborate and converse
19 with the professional network he has developed over years.  This reputational harm also
20 extends more broadly to his fans and the broader electronic music community.  These
21 statements have resulted in waves of vitriolic attacks in social media, and even cautious
22 attempts to defend himself and his reputation have either faced renewed attacks,
23 statements of indifference, or handwringing that it may be better to simply give up on
24 Plaintiff and his work, irrespective of the truth or falsity of these allegation.  In light of
25 the broader social climate, an accusation alone without context or evidence readily causes
26 tremendous harm.

27
28

71.    Google Trends data, also attached as **Exhibit "H"**, provides tangible evidence of this reputational harm:



72.    The above image shows the massive spike in search interest in the time immediately following Defendants' renewed efforts to propagate their defamatory statements regarding Plaintiff.    Related topics data shows how this traffic has been predominated by these defamatory statements:



73.    Defendants' conduct was and is a substantial factor in causing Plaintiff's material economic losses.    Plaintiff is a renowned musician, touring constantly

throughout the year including over a dozen performances in a given month. Plaintiff, as is now common in the music industry, made the majority of his income through live performances and the sale of merchandise. After the start of the COVID-19 pandemic, Plaintiff adapted through livestreamed performances and the promotion of his merchandise sales. Defendants' false accusations have cost a terrible toll on his ability to monetize either, making the former untenable due to loss of viewership and harassment, and causing the sale of the latter to wither. Plaintiff was previously represented by C3 Management, who supported and defended him in 2019, going so far as to hire previous counsel who documented many of the threats and admissions to threats described and documented herein. The ongoing campaign of false statements and harassment directed at Plaintiff, and the incessant contact of C3 Management by Defendant Michaela Higgins/Caeli La, ultimately contributed to C3 ending their relationship with Plaintiff. This has severely hamstrung Plaintiff's capacity to both maintain an income in the present environment and to plan for the return to regular performing and business operations once feasible to do so. Further, the events which Plaintiff regularly performed at are planned months and years in advance, planning which is ongoing as vaccinations continue apace and organizers work to schedule events this year. Despite many of the lineups for these events being reinstated, and Plaintiff having been scheduled throughout 2020, he has received few communications about rejoining the lineups for these events as they are scheduled for this year and into the future.

74. Defendants' conduct has caused Plaintiff levels of mental suffering and emotional distress which are difficult to fathom, let alone calculate. Over the course of years of harassment, controlling behavior, defamatory statements, and emotional manipulation, Plaintiff attempted to resolve and disengage with Defendant Michaela Higgins, itself causing significant stress and anxiety. Defendant instead rejected these overtures, escalating her baseless accusations, targeting his management team, and ultimately publicly defaming Plaintiff. Plaintiff now daily is burdened with the weight of being wrongly labeled as the worst and most contemptible kind of person in society –

a pedophile, a rapist, a perpetrator of sexual and emotional abuse, and of giving illicit substances to minors with knowledge. The slightest realization that these labels persist causes deep, recurring bouts of depression, both that these accusations and labels persist and that he has had few means to discredit them. The anxiety that comes with the prospect of losing his career, his livelihood, his pride, and his dignity is incessant. Plaintiff's musical creativity plummeted in coping with these emotions, depriving him of one of his most valuable coping mechanisms and further entrenching his sense of shame and loss of enjoyment in life. These went months without doing so at all meant that when he tries again, he is reminded of what is at stake, the complete loss of control, and the sense of hopelessness that Plaintiff has felt that he would ever be able to live something like his former life again.

75. Defendants' conduct as described herein was done with a conscious disregard of the rights of Plaintiff, with the intent to vex, annoy, and/or harass Plaintiff. Defendants, and each of them, knew the statements to be false or acted in reckless disregard of its truth or falsity. Defendant Higgins knew the statements pertaining to her allegations were false of her own personal knowledge and chose to repeat and elaborate on those statements over time. Defendants acted in reckless disregard of the truth or falsity of the statements made on various social media pages and, upon information and belief, in direct communications to various third parties. The course of conduct and campaign of harassment and false allegations demonstrate ill feeling, personal hostility, spite, and/or an actual desire to hurt Plaintiff without belief or without any reasonable grounds to believe in the truth.

## SECOND CAUSE OF ACTION

**(Harassment in Violation of California Code of Civil Procedure Section 527.6 – Plaintiff Jasha Tull Against Defendant Michaela Higgins and Does 1-10, inclusive)**

76. Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs 1 through 75 as though set forth fully herein.

77. Plaintiff is an individual natural person for the purposes of California Code of Civil Procedure Section 527.6. *Diamond View, Ltd. v. Herz* 180 Cal.3d 612, 616 (1986).

78. Plaintiff has been the target of and has been subjected to Defendants knowing and willful course of harassing conduct directed at him. California Code of Civil Procedure § 527.6(b)(3).

79. Defendants, and each of them, on information and belief, have engaged in recurring and unwanted contact with the personal and professional phone numbers, email addresses, and/or social media accounts of Plaintiff.

80. Upon information and belief, Plaintiff has been subject to numerous unwanted communications from Defendants, and each of them, including text messages, phone calls, emails, and social media communications, which seek to falsely accuse him of being pedophile, a rapist, a perpetrator of sexual and emotional abuse, and of giving illicit substances to minors with knowledge.

81. These communications have caused Plaintiff substantial emotional distress, including in their content which falsely accuse him of criminal and otherwise deeply disturbing conduct.

82. Defendants, and each of them, have engaged in harassing communications over emails, text messages, phone conversations, and social media messages and posts, which demonstrate a course of conduct over more than four and a half (4.5) years, and thus demonstrating a continuity of purpose. California Code of Civil Procedure § 527.6(b)(1).

83. Defendants' conduct has served no legitimate purpose, serving only to make false accusations about Plaintiff, and creating substantial emotional distress on the part of Plaintiff based on continuously subjecting him to these false accusations and creating apprehension that they may be further propagated.

84. Defendants' ongoing harassing conduct has continued over the course of at least four and a half (4.5) years, continuing through the weeks and months prior to the

filing of this complaint. Defendants, and each of them, have thus demonstrated that this harassment is likely to recur based on the duration and continuing nature of their conduct. *Harris v. Stampolis* 248 Cal.App.4th 484, 499-501 (2016).

## **THIRD CAUSE OF ACTION**

**(Stalking in Violation of California <u>Civil Code</u> Section 1708.7 – Plaintiff Jasha Tull Against Michaela Higgins and Does 1-10, inclusive)**

85.     Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs 1 through 84 as though set forth fully herein.

86.     Defendants, and each of them, have made and continue to make repeated unwanted communications to Plaintiff.

87.     Defendants' repeated and unwanted communications as to Plaintiff constitute conduct over a period of time which evidences a continuity of purpose. California <u>Civil Code</u> Section 1708.7(b); *In re Brittany K.*, (2005) 127 Cal.4th 1497, 1510.

88.     Defendants' conduct by and through these repeated and unwanted communications were made with the intent to harass Plaintiff in order to alarm, annoy, and torment Plaintiff. Upon information and belief, Plaintiff has been subject to numerous unwanted communications from Defendants, and each of them, including repeated text messages, emails, and phone calls, including but not limited to threats and admissions of threats.

89.     These communications have caused Plaintiff substantial emotional distress, including in their content which falsely accuse him of criminal and other deeply wrongful behavior, and by creating apprehension that these false statements have been and will continue to be propagated, or that some unknown individual will seek reprisal for Plaintiff's purported conduct on Defendants' behalf.

90.     These communications have further caused Plaintiff to be put in reasonable fear for the safety of his family, including his parents and brother. Defendants, and each of their, ongoing harassing communications to Plaintiff, in the context of Defendant

Higgins' threats alleged previously to "ruin" Plaintiff, escalating public rhetoric made against him and his family, and Defendant Michaela Higgins' recent social media post with a firearm, have established and maintained in Plaintiff a reasonable fear for his personal safety and that of his family.

91. As described above, Defendants' actions amount to a credible threat implied by conduct, where Defendant Higgins made such an initial threat against Plaintiff, and Defendants have continued their harassment over the nearly four and a half (4.5) years since such threat was made.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as follows:

<u>As to the First Cause of Action</u>

(a) For temporary, preliminary, and permanent injunctions;

(b) For general and compensatory damages subject to proof;

(c) For punitive damages according to proof;

(d) For prejudgment and post judgment interest;

(e) For costs of suit incurred herein; and

(f) For such other and further relief as this Court may deem just and proper.

<u>As to the Second Cause of Action</u>

(a) For restraining orders in accordance with California <u>Code of Civil Procedure</u> Section 527.6;

(b) For costs of suit incurred herein; and

(c) For such other and further relief as this Court may deem just and proper.

<u>As to the Third Cause of Action</u>

(a) For temporary, preliminary, and permanent injunctions;

(b) For general and compensatory damages subject to proof;

(c) For punitive damages according to proof;

(d) For prejudgment and post judgment interest;

(e) For costs of suit incurred herein; and

**COMPLAINT FOR MONETARY DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF**

(f)    For such other and further relief as this Court may deem just and proper.

Dated: March 5, 2021                          **ARENDSEN CANE MOLNAR LLP**


By    */s/ Christian S.  Molnar*
                                              Christian S. Molnar, Esq.
                                              Tyler S. Summers, Esq.
                                              Attorneys for Plaintiff Jasha Tull, an
                                              individual.


## **REQUEST FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated: March 5, 2021                          **ARENDSEN CANE MOLNAR LLP**


By    */s/ Christian S.  Molnar*
                                              Christian S. Molnar, Esq.
                                              Tyler S. Summers, Esq.
                                              Attorneys for Plaintiff Jasha Tull, an
                                              individual.