1  DEBORAH S. MALLGRAVE, State Bar No. 198603
    *DMallgrave@GGTrialLaw.com*
2  **GREENBERG GROSS LLP**
    650 Town Center Drive, Suite 1700
3  Costa Mesa, California 92626
    Telephone: (949) 383-2800
4  Facsimile: (949) 383-2801

5  KAREN BARTH MENZIES, State Bar No. 180234
    *kbm@ClassLawGroup.com*
6  JEFFREY KOSBIE, State Bar No. 305424
    *jbk@ClassLawGroup.com*
7  **GIBBS LAW GROUP LLP**
    505 14th Street, Suite 1110
8  Oakland, CA 94612
    Telephone: (510) 350-9700
9  Facsimile: (510) 350-9701

10  Attorneys for Defendant Michaela Higgins

11                **UNITED STATES DISTRICT COURT**

12       **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

13  JASHA TULL an individual,                | Case No. 4:21-cv-01566-DMR

14            Plaintiff,                      | [Related to Case No.: 4:21-cv-01574-DMR]

15       v.                                   | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS**

16  MICHAELA HIGGINS, an individual a/k/a
    CAELI LA; and DOES 1 through 10 inclusive, | [Filed Concurrently with Motion to Strike, and Motion to Dismiss and Motion to Strike in Related Case]
17
            Defendants.
18
                                             | **Date:**   June 10, 2021
19                                           | **Time:**   1:00 p.m.
                                             | **Dept.:**  4
20

21

22

23

24

25

26

27

28

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 10, 2021, at 1:00 p.m., or as soon thereafter as the matter may be heard at the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, Courtroom 4, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Michaela Higgins ("Defendant" or ("Michaela"), by and through her attorney of record herein, will, and hereby does, move this Court for an Order to Dismiss the Complaint ("Complaint") and all of the claims asserted in this action, on the basis that each fails to state a claim for which relief can be granted.

This Motion will be based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and all legal authority cited therein, the Court's files and records in the instant action (the "Action"), the Court's files and records in the related action Case No.: 4:21-cv-01574, matters of which the Court may take judicial notice, and such further evidence as may be presented to the Court at the time set for the hearing on this Motion.


DATED:  April 28, 2021                    GREENBERG GROSS LLP



                                          By:      /s/ Deborah S. Mallgrave
                                                Deborah S. Mallgrave

                                          GIBBS LAW GROUP LLP
                                          Karen Barth Menzies
                                          Jeffrey Kosbie

                                          Attorneys for Defendant Michaela Higgins

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................1

II.  FACTUAL ALLEGATIONS IN COMPLAINT ....................................................2

    A.  The Parties ..................................................................................................2

    B.  Jasha Sexually Assaults Michaela ...............................................................2

    C.  Jasha Continues his Emotionally Abusive Behavior Towards Michaela..................3

    D.  Jasha Accused of Sexual Assault By Others ................................................3

    E.  Michaela Seeks Accountability from Jasha .................................................4

    F.  Michaela Contacted C3 and Herman Tull for Help Seeking Accountability from Jasha ..................................................................................................4

    G.  More of Jasha's Sexual Assault Survivors Come Forward........................5

    H.  Jasha and His Parents File Lawsuits Against Michaela ...............................5

III.  ARGUMENTS ......................................................................................................7

    A.  Jasha Fails to State a Claim for Defamation. ..............................................7

        1.  Jasha is a Public Figure. ...................................................................7

        2.  The Complaint Insufficiently Pleads Actual Malice. ......................9

    B.  Plaintiffs' Civil Harassment Claim Fails to Plausibly Allege a Lack of Legitimate Purpose. ..................................................................................11

    C.  Jasha's Civil Stalking Claim Fails to Allege a Pattern of Conduct or Credible Threat. ......................................................................................................12

        1.  Jasha Does Not Plausibly Allege Pattern of Conduct With the Intent to Harass ...........................................................................................13

        2.  Michaela's Gun Photo Does Not Give Rise to a Credible Threat................13

IV.  CONCLUSION ..................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ampex Corp. v. Cargle,*
   128 Cal.App.4th 1569 (2005).................................................................... 8

*Annette F. v. Sharon S.,*
   119 Cal. App. 4th 1146 (2004).................................................................. 10

*Avila v. Cate,*
   2011 WL 2680844 (E.D. Cal. 2011) .......................................................... 11

*Bolton v. City of Berkeley,*
   No. 19-CV-05212-WHO, 2019 WL 6250927 (N.D. Cal. Nov. 22, 2019)............................. 13

*Brekke v. Wills,*
   125 Cal.App.4th 1400 (2005).................................................................. 11

*Byers v. Cathcart,*
   57 Cal.App.4th 805 (1997)...................................................................... 12

*Cepeda v. Cowles Magazines & Broad., Inc.,*
   392 F.2d 417 (9th Cir. 1968) .................................................................. 8

*Crenshaw v. Lister,*
   556 F.3d 1283 (11th Cir. 2009) ............................................................. 11

*Curtis Pub. Co. v. Butts,*
   388 U.S. 130 (1967) ............................................................................ 8

*D.A.R.E Am. v. Rolling Stone Magazine,*
   101 F.Supp.2d 1270 (C.D. Cal. 2000)......................................................... 10

*D.A.R.E. Am. v. Rolling Stone Magazine,*
   270 F.3d 793 (9th Cir. 2001) ................................................................. 10

*Gertz v. Robert Welch, Inc.,*
   418 U.S. 323 (1974) .............................................................................. 7

*Hanna v. Moreira,*
   No. E070310, 2019 WL 3933564 (Cal. Ct. App. Aug. 20, 2019)........................... 11

*Harte-Hanks Communications v. Connaughton,*
   491 U.S. 657 (1989) .......................................................................... 9, 10

*Leidholdt v. L.F.P. Inc,*
   860 F.2d 890 (9th Cir. 1988)................................................................... 8

*McCoy v. Hearst Corp.*,
    42 Cal. 3d 835 (1986) ................................................................................................. 9

*New York Times Co. v. Sullivan*,
    376 U.S. 254 ........................................................................................................... 7, 9

*Nicosia v. De Rooy*,
    72 F. Supp. 2d 1093 (N.D. Cal. 1999) ....................................................................... 9

*Primetime's Solano v. Playgirl, Inc.*,
    292 F.3d 1078 (9th Cir. 2002) .................................................................................... 8

*Principe v. Curry*,
    No. 817CV00608JLSKESX, 2018 WL 1406912 (C.D. Cal. Jan. 3, 2018) ............... 12

*Reader's Digest Assn. v. Superior Court*,
    37 Cal.3d 244 (1984) .................................................................................................. 7

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
    302 F.Supp.3d 1005 (N.D. Cal. 2017) ....................................................................... 9

*Schild v. Rubin*,
    232 Cal.App.3d 533 (1991) ...................................................................................... 12

*Taus v. Loftus*,
    40 Cal.4th 683 (2007) ................................................................................................. 7

*Widener v. Pacific Gas & Electric Co.*,
    75 Cal.App.3d 415 (1977) .......................................................................................... 9

*Wynn v. Chanos*,
    75 F. Supp. 3d 1228 (N.D. Cal. 2014) ....................................................................... 9

**Statutes**

Cal. Civ. Code §§ 45–46 .................................................................................................. 7

Code Civ. Proc. § 527.6(b) ............................................................................................. 11

Code Civ. Proc. § 1708.7 ............................................................................................... 12

Code Civ. Proc. § 1708.7(a)(3)(A) ................................................................................. 13

Code Civ. Proc. § 1708.7(b)(1) ...................................................................................... 13

Code Civ. Proc. § 1708.7(b)(2) ...................................................................................... 13

Tenn. Code § 39-13-506 (2012) ....................................................................................... 4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

As is evident from even a cursory review of the Complaint, Defendant Michaela Higgins ("Michaela")[1] believes that Plaintiff Jasha Tall ("Jasha") sexually assaulted her and, from that assault, an exploitative sexual relationship—with further assaults—arose.  Unfortunately, Michaela's experience with Jasha is not unique.  Before Michaela had the strength and courage to come forward, other women were coming forward and sharing their stories.  And when Michaela finally shared her experience publicly on her Instagram account, @evidenceagainstspacejesus, numerous other women came forward.  Jasha might resent the notoriety in this form (as compared to his talents as a DJ), and the effect it is having on his ability to perform during the pandemic—if at all), but that does not turn Michaela's righteous conduct into claims for defamation, civil harassment, or stalking.  Jasha's lawsuit is a not-so-veiled attempt to intimidate Michaela, as well as other survivors, from speaking out about their experiences with Jasha and silence them from attempts to hold him accountable.  Neither Jasha's tactic nor his lawsuit have any merit, or even the plausibility required to support his alleged claims.

As set forth below, Jasha's defamation claim fails as Jasha, as a public figure, has failed to plead, with plausibility, the element of actual malice (as the very exhibits attached to Jasha's complaint clearly indicate, Michaela believes she was sexually assaulted and there are no allegations to suggest Michaela had any basis on which to believe the other women claiming to be sexually assaulted were not telling the truth); the civil harassment claim fails because it does not plausibly allege a lack of legitimate purpose to Michaela's conduct; and Jasha has not alleged facts to plausibly suggest Michaela's conduct constitutes civil stalking.  Accordingly, Jasha's complaint, and every claim for relief stated therein, should be dismissed in its entirety.

---

[1] As three of the parties referenced herein have the same last name, and two of these are both doctors, for ease and clarity all parties are referred to herein by their first names, including defendant.  No disrespect is intended.

## II.    FACTUAL ALLEGATIONS IN COMPLAINT

### A.    The Parties

Jasha is a "musical artist and producer who performs under the stage name 'Space Jesus', and has done so for over a decade."  (Docket No. 1 ("Compl."), ¶ 12).  Jasha is "a leading performer in the electronic music subgenre known as 'Bass music.'"  (*Id.*)  Jasha's music "has accumulated tens of millions of plays on the music streaming platform Spotify, with over a quarter of a million individuals listening to his music per month, on that platform alone as of March 2021." (*Id.*)  Jasha is "one of the leading performers in the subgenre of electronic music in which he performs," and a "renowned musician, touring constantly" with a reputation reaching "his fans and the broader electronic music community."  (*Id.*, at ¶¶ 70, 73.)  When he's not travelling, Jasha claims to reside with his parents in New Jersey.  (*Id.*, at ¶ 12.)

Michaela is a performer herself, and is a hired dancer for many of the same music festivals at which Jash plays.  Her stage name is Caeli La.  Michaela also performs tantra massage and has a PR and promotions business.  (Ex. E, p. 2–3.)  As alleged in the Complaint, Michaela currently resides in Healdsburg, California.  (*Id.*, at ¶ 2.)

### B.    Jasha Sexually Assaults Michaela

As alleged in the complaint, Jasha and Michaela had an exploitative sexual relationship from around June 2016 through the late summer/early fall of 2016.  (Compl. ¶¶ 13–14.)  As Michaela contends, the first time Jasha and Michaela "got together," Jasha sexually assaulted Michaela.  (Ex. H., p. 8.)  As they were kissing, Jasha penetrated Michaela without her consent, and so quickly that Michaela did not know what was happening until it was too late and over.  (*Id.*) (Jasha "pulled my underwear aside (I was wearing a dress), and entered me without a condom . . . [and] so fast").  In another instance, Jasha forced Michaela to continue having sex with him, after his friends had walked in on them, even after she told him to stop and tried to push him off of her.  (Ex. H, p. 5–6.)  Asserting his dominance and humiliating Michaela, Jasha even bragged to his friends that he "was inside her right now."  (*Id.*)  In addition to his sexually assaultive actions, Jasha was also verbally and emotional abusive to Michaela.  (Ex. E, pp. 6, 9, 18.)

1    As the "relationship" with Jasha ended, Michaela felt Jasha used her and cast her aside.

2  (Compl. ¶ 18.)  To say the least, the ending was not a clean one.  Michaela felt Jasha tried to control

3  her by forcing her into a non-monogamous relationship and denying her any compassion or

4  understanding.[2]  (Ex. E, p. 16.)  At one point, Jasha even accused Michaela of sexually abusing

5  him.  (Ex. A, ¶ 18(b)–(d); Ex. E, pp. 15, 22.)  As the result of the tumultuous relationship and

6  Jasha's abusive behavior, Michaela ended up in therapy and treatment for PTSD.  (Ex. E., pp. 9, 11,

7  41; Ex. H., p. 10.)

8    It was during therapy and this treatment that Michaela realized Jasha sexually assaulted

9  her.  (Ex. E, p. 6; Ex. H, p. 8.)  Even though Michaela knew Jasha's assaults were wrong, she

10  justified them both at the time and for months afterwards both because of Jasha's bullish and

11  manipulative tactics and his abuse of his power and influence as a popular performer.  (Id.)

12    **C.**    **Jasha Continues his Emotionally Abusive Behavior Towards Michaela**

13    About four months after their exploitive relationship ended, in around February 2017, Jasha

14  texted Michaela and asked her to unblock him from social media.  (Ex. E., p. 9, Ex. H, pp. 10–11.)

15  Michaela did.  (Id.)  As Jasha and Michaela were both playing at an upcoming festival, Jasha

16  suggested they meet up.  (Id.)  In a subsequent message, Jasha told Michaela he had gotten back

17  together with his ex-girlfriend.  (Id.)  Among other things, knowing Jasha's girlfriend would not be

18  okay with Jasha and Michaela meeting up, she declined to meet up with Jasha.  (Id.)  Jasha instantly

19  turned on Michaela, threatening to tell the festival security guards that she was a "deranged stalker"

20  and threatened to destroy her career.  (Id.)  Jasha also shamed Michaela be telling her that his dad,

21  Herman, says he can tell that Michaela did not go to college by the way she speaks.  (Ex. E, pp. 14,

22  51–52.)

23    **D.**    **Jasha Accused of Sexual Assault By Others**

24    On March 15, 2018, Dancing Astronaut published a story with the headline "Breaking:

25  Datsik and Space Jesus Accused of Sexually Assaulting Multiple Victims."  (Ex. H, p. 11.)  While

26  _____

27    [2] Jasha complains about the number of text and email communications and yet it would
seem "[a]lmost [] the entire breakup went down over text or email."  (Compl., Ex. A, ¶ 18(a); Ex.

28  E, p. 20.)  As a victim of sexual assault, Michaela can get "nervous and tongue tied" when
speaking.  (Ex. E, pp. 2, 14, 21.)

Jasha denied the allegations, and Dancing Astronaut withdrew the allegations a few days later, multiple people posted their stories and information that Jasha had given drugs and alcohol to underage girls, before having sex with them.  (*Id.*)  One such account was posted by Lilly Anderson, who wrote of her 17-year-old friend who had sex with Jasha in Tennessee.[3]  (Ex. E., p. 11; Ex. F, pp. 6–9.)  Jasha admits to having sex with a person he "believed to be over eighteen then but later learned was likely seventeen," though he claims it was in Oklahoma.  (Ex. A, ¶ 21.)

### E.      Michaela Seeks Accountability from Jasha

Following the backlash from the allegations of sexual assault rocking Jasha and Datsik, Jasha announced plans to perform at a "consent benefit" to raise awareness about consent. Michaela was "physically pain[ed]" to see Jasha "paint himself as an ally and supporter now" when he had never taken responsibility for his own actions relating to "consent and the perpetuat[ion of the] rape culture that that brings up."  (Ex. E., p. 9.)  Michaela contacted both Jasha and the sponsoring organization to bring the hypocrisy to everyone's attention.  (Ex. A, ¶ 25; Ex. E, pp. 7– 10, 17; Ex. H, p. 11.)  Michaela did not demand money, just responsibility and accountability.  (*Id.*) In the end, Jasha and Michaela talked, Jasha apologized to Michaela, and seemingly claimed he would take responsibility and accountability for his actions.  (Ex. E., p. 11.)  Convinced Jasha had seen the error of his ways, Michaela withdrew her objection to his performing at the benefit.  (*Id.*; Ex. A, ¶ 44.)  After Jasha failed to keep a promise to talk with Michaela on the Monday after the consent benefit, Michaela spent the following weeks and months asking Jasha to make good on his promises to her, but Jasha did not appear to be holding himself accountable for his past behavior or making amends.  (*Id.*)

### F.      Michaela Contacted C3 and Herman Tull for Help Seeking Accountability from Jasha

Still seeking to hold Jasha accountable, in January 2019, Michaela contacted Jasha's management team at C3, notifying them of both her and the 17-year old's sexual assault allegations. (Compl., ¶¶ 27–33, 35, Ex. F, pp. 6–29.)  In the months that followed, Michaela and C3 exchanged

---

[3] The age of consent for sexual activity in Tennessee is 18 years old.  *See* Tenn. Code § 39- 13-506 (2012).

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

1  multiple emails as C3 claimed to be investigating the situation.  (*Id.*)  Michaela would at times

2  forward her communications to C3 to Jasha and/or his father, Herman, or include Herman as blind

3  carbon copy (bcc) recipient on the communications.  (*Id.*)  Needless to say, the situation was not

4  resolved.

5      **G.      More of Jasha's Sexual Assault Survivors Come Forward**

6          Thereafter (on or about April 5, 2019), Michaela learned of a protest organized outside of

7  one of Jasha's shows, by young women who said they had witnessed similar sexual misconduct.

8  (Ex. H, p. 14.)  Both Michaela and, separately, a woman who goes by the names Dia and Kiki were

9  inspired by this protest to come forward regarding their own experiences, and, on or around June

10  20, 2019, Kiki posted on social media about rape culture in EDM, specifically mentioning her

11  experience with Jasha.  (Ex. H, p. 14; *see also* Ex. 2 attached hereto.)  Michaela saw Dia/Kiki's post

12  and "found that [Jasha] had done the same thing to Dia/Kiki the first time they had sex [non-

13  consensual penetration], and also threatened to destroy her dance career shortly after she broke

14  things off with him, [Michaela] realized that a private, internal resolution [with Jasha] was not

15  possible.  (*Id.*)  As Michaela wrote on her post, "[t]he only way to protect young, vulnerable, even

16  underage fans and others from [Jasha's] well-established pattern of abuse is sharing [their] stories."

17  (*Id.*)

18          In the summer of 2020, Michaela started @evidenceagainstspacejesus and went public with

19  her story.  (Compl. ¶¶ 36–37, Ex. H.)  After she did so, more victims came forward to share their

20  stories of Jasha's sexual assaults, aggressive behavior, and substance abuse, including with

21  underage girls.  (Ex. H, p. 4.)

22      **H.      Jasha and His Parents File Lawsuits Against Michaela**

23          Framing Michaela's efforts to educate and seek accountability for sexual assault offenders

24  as a "campaign of harassing, defaming, bullying, threatening, cyber-stalking and intimidat[ing]"

25  conduct towards Jasha and his parents, Herman and Lekha, all three have filed claims against

26  Michaela for defamation, civil harassment, and civil stalking.  (Compl. ¶ 17; see also related Case

27  No.: 4:21-cv-01574, Docket No. 1.)

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

Jasha bases his defamation claim on 14 statements posted by Michaela to her Instagram accounts (either @evidenceagainstspacejesus or @xxeyesaxx) or her Twitter account, between June 20, 2020, and September 12, 2020.[4]  (*Id.*, at ¶¶ 41–55.)  Almost all of the statements alleged relate to allegations of sexual assault, either by Michaela or another survivor.  (*Id.*)  At least three of the statements identified concern personal opinions (June 26, 2020 - "You're an actual, factual psychopath @spacejesus"; June 29, 2020 -  "Whatever personality disorder Trump has (is it psychosis? megalomania? just straight up soul-less?), jasha has it too,"; and September 12, 2020 – "Only a truly evil psychopath would charge people for a free COVID test, let alone their son's friends.")  (*Id.*, at ¶¶ 47–49); and three of the statements are not from Michaela at all, but retweets from other third-party Twitter users (July 3, 2020, July 5, 2020, and August 9, 2020 tweets).  (*Id.* at ¶¶ 50, 52, 54.)

As shown above and throughout the numerous email, text messages, and social media posts identified and submitted with the Complaint, Michaela believes in the truth of her statements—that Jasha sexually assaulted her—and Jasha does not allege any facts by which one could infer Michaela had any reason to believe that the statements of others who allege Jasha sexually assaulted them might be false.

As to fear for his physical safety, Jasha alleges that Michaela has threatened to "ruin" Jasha, made escalating public rhetoric against Jasha, and made a "recent social media post "with a firearm."  (Compl. ¶ 90.)  As attached in Exhibit I, the recent "firearm post" was made on November 29, 2020, and is mostly a headshot of Michaela, holding a hunting rifle, with the text "Proud member of the Socialist Rifle Association," which Jasha combines with another post, made two weeks later, showing Michael stretching in a sunlit forest, and identifies her location as in Long Island, New York (which, according to Jasha, is about 50 miles from his family home).  (Compl. ¶ 57; Ex. I.)

---

[4] Plaintiff identifies that the following statements form the basis for his defamation claim: June 20, 2020 (Compl. ¶ 41); July 19, 2020 (¶ 42); July 19, 2020 (¶ 43); August 5, 2020 (¶ 44); August 5, 2020 (¶ 45); September 12, 2020 (¶ 47); June 26, 2020 (¶ 48); June 29, 2020 (¶ 49); July 3, 2020 (¶ 50); July 4, 2020 (¶ 51); July 5, 2020, (¶ 52); August 5, 2020 (¶ 53); August 9, 2020 (¶ 54); and September 11, 2020 (¶ 55).

1   The only alleged altercation between Jasha and Michaela allegedly occurred over four and

2   half years ago, on or about the week of September 4, 2016, when Michaela allegedly showed up at

3   the Tull residence unannounced and uninvited, and screamed at Jasha so profusely, the neighbors

4   ask about the incident to this day.  (*Id.*, ¶¶ 15–16.)  In attempting to diffuse the situation, Jasha

5   alleges the family invited Michaela into their home, cooked for her, and then Lekha secured a

6   booking change to an airline ticket to send Michaela to Portland, Oregon.  (*Id.*, at ¶ 15.)  The

7   booking confirmation email attached to the complaint, however, was sent on August 31, 2016

8   (before the weekend in question), and reflects a September 11, 2016 flight to Portland, Maine (not

9   Portland, Oregon).  (Ex. G, p. 3.)  Also attached to the Complaint is an email dated that same week,

10  sent on September 5, 2016, from Herman to Michaela, attaching a beach photo of Herman, Lekha,

11  Jasha, and Michaela all together and smiling.  (Ex. F, p. 3.)[5]

12  **III.   ARGUMENTS**

13       **A.   Jasha Fails to State a Claim for Defamation.**

14       Defamation requires "[1] a publication that is [2] false, [3] defamatory, [4] unprivileged, and

15  that [5] has a natural tendency to injure or that causes special damage."  *Taus v. Loftus*, 40 Cal.4th

16  683, 720 (2007); *see* Cal. Civ. Code §§ 45–46.  If the person allegedly defamed is a public

17  figure/limited public figure, he cannot recover unless he proves, by clear and convincing evidence

18  that the libelous statement was made with actual malice.  *Reader's Digest Assn. v. Superior Court*,

19  37 Cal.3d 244, 256–257 (1984) (*citing New York Times Co. v. Sullivan*, 376 U.S. 254, 285–286).

20  Jasha, as a public figure, fails to plead a plausible claim for defamation because none of the

21  allegations support a showing of actual malice.

22            **1.   Jasha is a Public Figure.**

23       Plaintiff is a public figure due to his status as an electronic musician and producer with a

24  large fan base.  Whether an individual is a public figure is a question of law that must be assessed

25  through a totality of the circumstances.  *See Reader's Digest Ass'n v. Superior Court*, 37 Cal.3d 244,

26

27       [5] As attached to the Complaint, Herman's email to Michaela, sending her the beach photo,

28  does not contain the actual photograph sent.  A complete copy of the email, with the photograph, is attached hereto as Exhibit 1.

208 (1984).  "In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts.  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974).  Alternatively, an individual is a limited purpose public figure if: (1) a public controversy exists; (2) the individual voluntarily acts seeking to influence the resolution of the public issue in controversy; and (3) the alleged defamation is germane to the individual's participation in the controversy.  *Ampex Corp. v. Cargle*, 128 Cal.App.4th 1569, 1577 (2005).

Public figures for defamation purposes include, "artists, athletes, business people, dilettantes, anyone who is famous or infamous because of who he is or what he has done."  *Cepeda v. Cowles Magazines & Broad., Inc.*, 392 F.2d 417, 419 (9th Cir. 1968); *see Primetime's Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1081 (9th Cir. 2002) (television actor was a public figure); *Leidholdt v. L.F.P. Inc*, 860 F.2d 890, 893 (9th Cir. 1988) (leader in the anti-pornography movement, who had participated in numerous news article and public debates on the topic of pornography, was a public figure); *see generally Curtis Pub. Co. v. Butts*, 388 U.S. 130, 164 (1967) (finding "as a class these 'public figures' have as ready access as 'public officials' to mass media of communication, both to influence policy and to counter criticism of their views and activities").

Along with his musical skill and abilities, Jasha has amassed a following within the electronic music realm, resulting in "tens of millions of plays on the music streaming platform Spotify, with over a quarter of a million individuals listening to his music per month, on that platform alone as of March 2021."  (*Id.*, at ¶ 12.)  Indeed, Jasha admits to his fame as "one of the leading performers in the subgenre of electronic music in which he performs," and a "renowned musician, touring constantly" with a reputation reaching "his fans and the broader electronic music community."  (*Id.*, at ¶¶ 70, 73.)  Jasha is a public figure because he is an artist who is famous for his musical talents.

Further, on March 15, 2018, Dancing Astronaut published a story that called out Jasha and another artist, Datsik, for various acts of sexual assault.  (Ex. H, p. 11.)  Multiple people posted stories and information suggesting Jasha had given drugs and alcohol to underage girls, before having sex with them.  (*Id.*)  In response, Jasha voluntarily made statements regarding this controversy by publicly denying these statements in attempts to influence the resolution of the

sexual misconduct allegations.  (*Id.*)  Additionally, Jasha remained within this controversy by announcing plans to perform at a "consent benefit" to raise awareness about consent.  Now, Jasha challenges Michaela's statements regarding his alleged sexual assault of her.

Whether as a "renowned musician", or an individual who has previously participated in a relevant controversy, Jasha is a public figure.  As such, succeeding on his defamation claim requires Jasha to make a showing of actual malice.

### 2.    The Complaint Insufficiently Pleads Actual Malice.

As a public figure, Jasha fails to adequately plead the actual malice required for all of Michaela's allegedly defamatory statements.  (Compl. ¶¶ 41–55.)

Actual malice requires the defamatory statement to have been made with "knowledge that it was false or with reckless disregard of whether it was false or not."  *New York Times v. Sullivan*, 376 U.S. 254, 279–80 (1964).  Actual malice directs attention to the "defendant's attitude toward the truth or falsity of the material published . . . [not on] the defendant's attitude toward the plaintiff."  *Widener v. Pacific Gas & Electric Co.*, 75 Cal.App.3d 415, 434 (1977), *disapproved on other grounds*, by *McCoy v. Hearst Corp.*, 42 Cal. 3d 835, 846 (1986).  To survive a motion to dismiss, plaintiffs must meet the "demanding burden" of alleging non-conclusory facts that render their actual malice claim plausible.  *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F.Supp.3d 1005, 1018 (N.D. Cal. 2017); *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014).  "[T]he actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term . . . [instead, it] requires at a minimum that the statements were made with a 'high degree of awareness of . . . probable falsity,' . . . or [the defendant] must have 'entertained serious doubts as to the truth of [her] publication.'"  *Harte-Hanks Communications v. Connaughton*, 491 U.S. 657 (1989) (*quoting St. Amant v. Thompson*, 390 U.S. 727 (1968)).

Actual malice is not properly plead with purely conclusory allegations that defendants had a particular state of mind in publishing the statements, *Resolute Forest Prod., Inc.*, at 1017–18; by alleging the defendant fabricated statements, disregarded information contrary to the statement, or had no reliable information on which to base the accusations against plaintiff, *Wynn v. Chanos*, 75 F. Supp. 3d at 1239; by alleging the defendant should have known the truth, *Nicosia v. De Rooy*, 72

F. Supp. 2d 1093, 1109 (N.D. Cal. 1999); by "merely through a showing of ill will or 'malice' in the ordinary sense of the term," *Harte-Hanks Communications v. Connaughton*, 491 U.S. 657 (1989) (*quoting St. Amant v. Thompson*, 390 U.S. 727 (1968)); or by a showing of the defendant's motives for publication of statements with a particular slant, *D.A.R.E Am. v. Rolling Stone Magazine*, 101 F.Supp.2d 1270, 1285-86 (C.D. Cal. 2000), *aff'd sub nom. D.A.R.E. Am. v. Rolling Stone Magazine*, 270 F.3d 793 (9th Cir. 2001).

While he asserts the falsity of Michaela's statements, Jasha's facial challenges to the statements fail to illustrate actual malice.  In fact, Plaintiff's pleading of actual malice is at best conclusory.  (*See* Compl. ¶ 29 (Michaela "falsely claimed"); *id.*, at ¶ 39 ("true and correct copies of defamatory and other objectional social media postings"); *id.*, at ¶ 40 ("all of these false accusations are anonymous, second-hand, or both"); *id.*, at ¶ 66 (Michaela "knew, or had reasonable cause to believe, [the statements] were false and defamatory, whether by personal knowledge or by reckless disregard of the statements' falsity"); *id.*, at ¶ 67 (Michaela "knew, or had reasonable cause to believe, that [Jasha] had not done [the acts in the statements], as [Michaela] knew, or had reasonable cause to believe, that [Jasha] did not commit said acts")).  In the same vein, Jasha's categorization of certain statements as unattributable or second-hand also fails to illustrate that Michaela made the statements with a 'high degree of awareness of . . . probable falsity,' . . . [or that she] 'entertained serious doubts as to the truth of [her] publication[s],'"  *Harte-Hanks Communications v. Connaughton*, 491 U.S. 657 (1989).  (*See* Compl., ¶ 28 ("unattributable or second-hand); *id.*, at ¶ 40 ("all of these false accusations are anonymous, second-hand, or both")).

Instead, Jasha spends a considerable portion of the Complaint describing Michaela's "malign" intentions, "violent threats" and "wrongful accusations".  These attempts to portray Michaela as a vengeful person are equally as unavailing in pleading actual malice.  Indeed, these allegations, taken as true, at best illustrate ill will or "malice" in the ordinary sense of the term. *Harte-Hanks Communications*, 491 U.S. at 666.  While actual malice may be proved by circumstantial evidence, it will not be inferred "solely from evidence of personal spite, ill will or bad motive." *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1167, 1169 (2004).  Even if Michaela held "malign" intentions toward Jasha—which she did not—these allegations do not

illustrate actual malice.  Instead, Jasha's Complaint suggests a contrary conclusion: that Michaela believed her statements to be true.  In fact, around the time of his "consent benefit" concert, Jasha spoke to Michaela and apologized to her, seemingly taking responsibility and accountability for his actions.  (Ex. E., p. 11.)

Simply put, Jasha has not, and is unable to plead a plausible claim that Michaela made the alleged defamatory statements with a reckless disregard of their truth, nor knowledge of their falsity.  Given Jasha's inability to sufficiently plead the requisite element of actual malice, Michaela respectfully respects this Court dismiss the first cause of action for defamation in its entirety.

## B.  Plaintiffs' Civil Harassment Claim Fails to Plausibly Allege a Lack of Legitimate Purpose.

To plead a claim for civil harassment under California Code of Civil Procedure Section 527.6, Plaintiffs must plausibly allege "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, *and that serves no legitimate purpose*."[6]  Code Civ. Proc. § 527.6(b) (emphasis added); *see Brekke v. Wills*, 125 Cal.App.4th 1400, 1413–1414 (2005).  Here, the alleged course of conduct to which Jasha complains as harassing, as evidenced from the communications themselves, focuses almost entirely on Michaela's efforts to educate and seek accountability from sexual assault offenders for herself and others and to clarify and understand the disparaging remarks that Plaintiff was making about Michaela.  When the attached exhibits contradict the allegations in the complaint, the contents of the exhibits trump the pleadings.  *See, e.g.*, *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009); *Avila v. Cate*, 2011 WL 2680844, *5 n. 1 (E.D. Cal. 2011).  Plaintiff's conclusory allegations to the contrary (that Michaela's conduct serves no legitimate purpose) are insufficient to plead a plausible legal theory for civil harassment.  *See Hanna v. Moreira*, No. E070310, 2019 WL 3933564 (Cal. Ct. App. Aug. 20, 2019) (emails evidencing legitimate purpose on their face insufficient for harassment claim).

---

[6] Under section 527.6(b), a civil harassment claim can also be based on allegations of unlawful violence or a credible threat of violence, but Jasha does not plead a claim based on any such alleged conduct.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

Further, the standard for conduct serving as a legitimate purpose is quite low and includes anything from parking one's car in a desired location, to getting exercise, to seeking recourse for a perceived wrong, to information encouraging investigation into a company's business practices. *See, e.g., Byers v. Cathcart,* 57 Cal.App.4th 805 (1997) (parking car in desired location); *Schild v. Rubin,* 232 Cal.App.3d 533 (1991) (playing basketball and getting exercise); *Hanna v. Moreira*, No. E070310, 2019 WL 3933564 (Cal. Ct. App. Aug. 20, 2019) (seeking recourse for a perceived wrong); *Principe v. Curry,* No. 817CV00608JLSKESX, 2018 WL 1406912 (C.D. Cal. Jan. 3, 2018) (social media posts informing public about company and encouraging investigation into its business practices).  Certainly, Defendant's stated purposes for the alleged communications, in seeking accountability, preventing sexual assaults, and clarifying and understanding Jasha's disparaging remarks about Michaela, are at least as legitimate as those found in other situations.  Plaintiff's conclusory allegations to the contrary, when compared to the legitimate purposes of the communications as identified within the very communications attached to the Complaint, are insufficient to *plausibly* allege that the communications have no legitimate purpose.

**C.**   **Jasha's Civil Stalking Claim Fails to Allege a Pattern of Conduct or Credible Threat.**

To plead a claim for civil stalking, a plaintiff must plausibly allege: (1) the defendant engaged in a pattern of conduct the *intent of which was to harass the plaintiff*;[7] (2) the plaintiff reasonably feared for his or her safety or the plaintiff suffered from substantial emotional distress and the reasonable person would suffer substantial emotional distress; (3) the defendant made a credible threat with the intent to place plaintiff in reasonable fear for his safety or with reckless disregard for the plaintiff's safety;[8] and (4) the plaintiff, on at least one occasion, clearly and definitively demanded that the defendant cease their pattern of conduct.  Code Civ. Proc. § 1708.7.

---

[7] Under section 1708.7(1), a civil stalking claim can also be based on allegations of a defendant's intent to follow, alarm, or place under surveillance, but Jasha does not plead a claim based on any such alleged conduct.

[8] Under section 1708.7(3)(B), a civil stalking claim can also be based on the defendant violating a restraining order, but Jasha does not plead a claim based on any such alleged conduct.

1  Here, Jasha does not plausibly allege either a pattern of conduct with the intent to harass plaintiff,

2  or a credible threat to Jasha's safety.

3           **1.**        **Jasha Does Not Plausibly Allege Pattern of Conduct With the Intent to**

4                       **Harass**

5         A pattern of conduct is a series of acts over a period of time evidencing a continuity of

6  purpose *to harass* the plaintiff.  Code Civ. Proc. § 1708.7(b)(1).  As already discussed above, the

7  alleged course of conduct to which Jasha complains as harassing, as evidenced from the

8  communications themselves, focuses almost entirely on Michaela's efforts to educate and seek

9  accountability from sexual assault offenders for herself and others and to clarify and understand the

10  disparaging remarks that Plaintiff was making about Michaela.  In light of the actual

11  communications identified within and attached to the Complaint (and incorporated therein), Jasha's

12  allegations that Michaela's conduct did not have a legitimate intent, but served only to harass Jasha,

13  is not plausible.

14           **2.**        **Michaela's Gun Photo Does Not Give Rise to a Credible Threat**

15         A civil stalking claim must also plausibly allege sufficient facts that a defendant "made a

16  credible threat with either (i) the intent to place the plaintiff in reasonable fear for his or her safety

17  or the safety of an immediate family members, or (ii) reckless disregard for the safety of the

18  plaintiff or that of an immediate family member.  In addition, the plaintiff must have, on at least one

19  occasion, clearly and definitively demanded that the defendant cease and abate his or her pattern of

20  conduct."  Code Civ. Proc. § 1708.7(a)(3)(A).  A credible threat is defined as "a verbal or written

21  threat . . . made with the intent and apparent ability to carry out the threat so as to cause the person

22  who is the target of the threat to reasonably fear for his or her safety or the safety of his or her

23  immediate family."  Code Civ. Proc. § 1708.7(b)(2).

24         Here, Jasha alleges Michaela made credible threats to "ruin" him, escalating "public

25  rhetoric," and posting a picture of herself in November 2020 with a firearm.  (Compl. ¶ 90.)  To

26  allege a plausible claim that Michael made a credible threat *towards Jasha with intent* "to place him

27  in reasonable fear," however, Jashsa must allege more than merely identifying various encounters

28  with Michaela.  *Bolton v. City of Berkeley,* No. 19-CV-05212-WHO, 2019 WL 6250927 (N.D. Cal.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

Nov. 22, 2019) (dismissal of civil stalking claim for failure to allege credible threat with intent to place reasonable fear).  Jasha's only allegation that comes remotely close to plausibly indicating an intent to harm Jatha or cause any fear is Jashsa's allegation concerning Michael's firearm post.  Yet, that too, falls far short of alleging a legal cognizable claim for civil stalking.

The post itself is not directed to Jasha (or his family) in *any* way.  It is simply a picture of Michaela (mostly a head shot), with a rifle, with the text "Proud member of the Socialist Rifle Association."  (Ex. I.)  The second post that Jasha includes is dated two weeks later and is a picture of Michaela stretching in a sunlit forest, with the location identified as in Long Island, New York. *Id.*  There is absolutely nothing in the second post (Michaela stretching in a forest) to connect it or link it to the first post (SRA post).  That the second post is tagged with a Long Island, New York location does not magically give rise to some hidden reference to Jasha or his family.  In his own Complaint, Jasha alleges that Michaela "resid[es] partially" in New York, (Compl. ¶ 2.), so it stands to reason that she would occasionally be in New York.  As for Jasha and his family, Jasha alleges that they live in New Jersey.  (*Id.*, at ¶¶ 1, 12.)  Two states may be in proximity to each other, but that does not necessarily mean that standing in one is a veiled threat to the residents in another.  To connect the picture of Michaela stretching in Long Island, to Michaela's earlier SRA picture/post, to a presumed intent that Michaela was threatening to harm Jasha or his family (or have cause harm to them through some form of "mutual aid) is attenuated at best but, at the very, least does not support a plausible claim for civil stalking.

## IV.    **CONCLUSION**

For the above reasons, Defendant respectfully requests that this Court grant her motion to dismiss in its entirety.  Defendant understands that leave to amend is liberally granted in the early rounds of pleading.  However, Defendant requests that this Court consider dismissing Plaintiff's frivolous claims with prejudice.

1    DATED:  April 28, 2021                    GREENBERG GROSS LLP

2

3                                              By:        /s/ Deborah S. Mallgrave

4                                                    Deborah S. Mallgrave

5                                                    GIBBS LAW GROUP LLP
                                                     Karen Barth Menzies
6                                                    Jeffrey Kosbie

7                                                    Attorneys for Defendant Michaela Higgins

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28