UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASHA RUBEN TULL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAELA HIGGINS,<br><br>　　　　　Defendant. | Case No. 21-cv-01566-DMR<br><br>**ORDER ON MOTIONS TO DISMISS AND MOTIONS TO STRIKE**<br><br>Re: Dkt. Nos. 24, 25 |
| LEKHA TULL, et al.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAELA HIGGINS,<br><br>　　　　　Defendant. | Case No. 21-cv-01574-DMR<br><br>Re: Dkt. Nos. 24, 25 |

Plaintiffs in these related cases are Jasha Tull and his parents, Herman Tull and Lekha Tull. They allege claims for defamation, civil harassment, and civil stalking against Defendant Michaela Higgins aka Caeli La and ten Doe Defendants. Higgins now moves to dismiss and to strike portions of the complaints. [Docket Nos. 24, 25 in Case No. 21-cv-01566; Docket Nos. 24, 25 in Case No. 21-cv-01574.] These motions are suitable for determination without oral argument. Civil L.R. 7-1(b). For the following reasons, the motions to dismiss are granted in part and denied in part. The motion to strike portions of Jasha Tull's complaint is granted in part and denied in part, and the motion to strike portions of Herman Tull and Lekha Tull's complaint is granted.

## I. BACKGROUND

The allegations in Plaintiffs' complaints are largely similar. As Plaintiffs share the same

last name, the court refers to Plaintiffs using their first names for clarity.  To avoid repetition, the court first sets forth the allegations in Jasha's complaint and then turns to the additional allegations in Herman and Lekha's complaint specific to their claims.

The same set of ten exhibits is attached to both complaints.  The exhibits contain declarations by Plaintiffs and a relative (Exs. A-D) about the allegations in the complaint, as well as collections of emails, text messages and screenshots of text messages by and between the parties (Exs. E-G).  The exhibits also contain screenshots of various social media postings, including the postings containing the statements at issue in the defamation claims (Exs. H, I, J).

### A.    Allegations in Jasha's Complaint

Jasha makes the following allegations in his complaint, all of which are taken as true solely for purposes of this motion.[1]  Jasha is an electronic musician and producer who performs under the stage name "Space Jesus."  Compl. ¶ 1.[2]  He alleges that he is "[a] leading performer in the electronic music subgenre known as 'Bass music'" and that his music "has accumulated tens of millions of plays on the music streaming platform Spotify . . ."  *Id*. at ¶ 12.  He "regularly if not exclusively" lives with his parents Herman and Lekha in Princeton, New Jersey.  *Id*. at ¶ 12.

Jasha began a romantic relationship with Higgins in June 2016.  In July 2016, Jasha invited Higgins to stay with him and his family at their homes in Princeton and Harvey Cedars, New Jersey.  *Id*. at ¶ 13.  The relationship then "concluded in the late summer and early fall of 2016," and Jasha alleges that Higgins "became extremely emotionally distraught, volatile, and verbally abusive" during this time.  *Id*. at ¶ 14.  During the week of September 4, 2016, Higgins appeared without warning at Plaintiffs' vacation home in Harvey Cedars and "screamed that she and [Jasha] were meant to be together, and that if he did not agree to renew their relationship, that she would seek to destroy him personally and professionally."  *Id*. at ¶ 15 (emphasis removed).  After Jasha "diffuse[d] the situation," Plaintiffs invited her into their home and assisted her with returning to

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

[2] All citations to the "complaint" in this section are to Jasha's complaint.

2

United States District Court
Northern District of California

1  Portland, Oregon.  *Id.*

2      Jasha alleges that since the relationship ended, Higgins "has undertaken a campaign of

3  harassing, defaming, bullying, threatening, cyber-stalking and intimidating [Jasha]," his parents,

4  and their friends.  *Id.* at ¶¶ 17, 18.  Starting in early 2017, Higgins "began rapidly escalating her

5  menacing tone while communicating with [Jasha]."  Jasha alleges that Higgins's "violent threats

6  and statements" put him and his family "in fear and apprehension that [Higgins] and/or a third-

7  party directed or solicited by her were capable of causing him and his family serious physical

8  harm."  The statements included "I hate you now," "[y]ou are my enemy now," and "[t]hat makes

9  me want to fucking murder you."  *Id.* at ¶ 20 (emphasis removed).

10      Higgins has also "acknowledged making . . . various threatening statements against

11  [Jasha]," including the statement, "I guess I need some reassurance that this is something you

12  would have wanted to do even without the threat[.]"  *Id.* at ¶ 22 (emphasis removed).  Higgins also

13  stated, "[k]arma's a bitch . . . wrongly accuse someone of sexual abuse and never apologize for it,

14  and you may end up getting wrongly accused yourself."  *Id.* at ¶ 23 (emphasis removed).

15      In November 2018, Jasha agreed to meet Higgins in person to "deescalate the situation."

16  After their meeting in Echo Park, California, Higgins told Jasha "she 'totally underst[ood] not

17  wanting to talk moving forward' and that '[she] underst[ood] why [he] did the things [he] did and

18  [she forgave] him completely.'"  *Id.* at ¶ 21 (alterations in original).  Jasha "believed this would be

19  the conclusion of either any animosity or communications between him and [Higgins]."  *Id.*

20  However, in December 2018, Jasha spoke with Higgins on the phone "regarding her ongoing

21  concerns and animosity," which he believed had been resolved.  Higgins "referred generally to

22  'accountability,'" and instead of identifying "what specific instances of alleged harm had been

23  unaddressed and how [Jasha] could resolve them," Higgins "became audibly upset, crying, and

24  yelling."  After telling Jasha she loved him, Higgins ended the call by calling Jasha a "piece of

25  shit."  *Id.* at ¶¶ 25, 26.

26      In 2019, Higgins started contacting C3 Management, which represented Jasha in

27  connection with his music career, and copied Herman on her emails.  In a January 22, 2019 email,

28  Higgins "included a threat to promote screenshots of either unattributable or second-hand

3

United States District Court
Northern District of California

accusations that [Jasha] had knowingly engaged in forms of sexual misconduct . . . if his management did not speak to her about the 'accountability' [Jasha] had supposedly not yet taken." *Id.* at ¶¶ 27, 28.  On June 25, 2019, Higgins emailed Herman and accused Jasha of addiction to several illegal and legal drugs.  She also "falsely accused Jasha of having a 'psychotic break' in which he attacked a woman" at a music festival and implored his parents to "get him help."  *Id.* at ¶ 34.

In the summer of 2020, a user created an Instagram account with the username @evidenceagainstspacejesus.  The account "formerly stated that it was controlled by the Instagram account '@caelila', then later by '@caelislaysdemons' which, upon information and belief," is Higgins's personal Instagram account.  Jasha further alleges on information and belief that the @evidenceagainstspacejesus account is controlled by Higgins and Doe Defendants.  *Id.* at ¶¶ 36, 37, 56.[3]  Higgins's personal Twitter account, @caelila, has admitted to controlling the @evidenceagainstspacejesus Instagram account.  *Id.* at ¶ 38.

Jasha alleges that the @evidenceagainstspacejesus and @caelila accounts post images and comments falsely accusing Jasha of committing sex crimes, being a psychopath, a rapist, a sexual predator, and a pedophile, and having a personality disorder.  *Id.* at ¶¶ 40, 48-52.  He further alleges that "[s]eemingly all of these false accusations are anonymous, second-hand, or both."  *Id.* at ¶ 40.  The false accusations and statements at issue are:

- Higgins "was not given the opportunity to consent to unsafe sex [with Jasha] the first time"; that while Higgins was having sex with Jasha on another occasion, his manager and friends walked in and she "immediately tried to push [Jasha] off" but that he "refused to get off, kept pinning me down, and kept going," and told the witnesses "what if I told you guys I was inside of her right now?" (Compl. ¶¶ 41, 42; Ex. H at ECF pp. 5-6, 8);

- "Jasha has now fully admitted to one of the main allegations I initially contacted them about (drinking, doing drugs and having sex with a 17 yr old- not in Oklahoma, as he

---

[3] Higgins admits that she "started [the] @evidenceagainstspacejesus" account in 2020.  Mot. to Dismiss in Case No. 21-cv-01566 at 5; Mot. to Dismiss in Case No. 21-cv-01574 at 5.

claimed, but actually in Knoxville, where the age of consent is 18)" (Compl. ¶ 43; Ex. H at ECF p. 8);

- "Jasha raped me" (Compl. ¶ 44; Ex. H at ECF p. 18);

- "'@evidenceagainstspacejesus' stated that [Jasha] had consumed alcohol and other illicit substances with, then statutorily raped a 17-year-old girl" (Compl. ¶ 45; Ex. H at ECF p. 11);

- "You're an actual, factual psychopath @spacejesus" (Compl. ¶ 48; Ex. H at ECF p. 32);

- "Whatever personality disorder Trump has (is it psychosis? megalomania? just straight up soul-less?), jasha has it too.  They operate the exact same way" (Compl. ¶ 49; Ex. H at ECF p. 28);

- Twitter account "@caelila retweeted a tweet from '@Dmoney0101' stating 'So disheartening to see @bassnectar @spacejesus and @NahkoBear exposed as sexual predators all in one week . . ." (Compl. ¶ 50; Ex. H at ECF p. 27);

- In response to the tweet, "I think she's in the wrong just as much as Jasha at this point. Even if he did manipulate/gaslight/treat her like shit, it isn't an excuse to drag others into it and harass/threaten them," Twitter account "'@caelila' tweeted 'You think I'm just as bad as a serial predator and rapist at this point?" (Compl. ¶ 51; Ex. H at ECF p. 34);

- Twitter account "'@caelila' retweeted a tweet from '@deadsoonshawty' stating 'burnt all our pedophile merch last night :) FUCK YOU @spacejesus'" (Compl. ¶ 52; Ex. H at ECF p. 26);

- Twitter account "'@caelila' stated that '@yhetimusic was not there the night Jasha raped me, as he claims" (Compl. ¶ 53; Ex. H at ECF p. 18);

- Twitter account "'@caelila' retweeted a tweet from "@shambhalaaa888' stating that [Jasha] had raped [Higgins]" (Compl. ¶ 54; Ex. H at ECF p. 17); and

- Twitter account "'@caelila' stated that [Jasha] is a 'serial rapist and predator'" and that "37 other victims came forward after I created the page, including some underaged

girls" (Compl. ¶ 55; Ex. H at ECF p. 4).

- Instagram account @xxeyeseaxx, which Jasha alleges is under Higgins's control, posted on Lekha's personal Instagram account a comment referring to Jasha as Lekha's "r*pist (sic) p*do (sic) son." (Compl. ¶ 47; Ex. H at ECF p. 15.)

Jasha denies each of these allegations and alleges that they are false and/or lies. Compl. ¶¶ 41-55.

Jasha alleges that @evidenceagainstspacejesus has had more than 6,100 followers at one time, and currently has more than 5,800 followers. He alleges that the total exposure of posts and comments on the account could reach 870,000 accounts, "constituting a vast mechanism for the distribution of [Higgins's] false and baseless accusations and harassing statements" about Jasha. *Id.* at ¶ 61.

Jasha further alleges that in November 2020, Higgins publicly posted a photograph of herself carrying a firearm and identifying herself as a member of the Socialist Rifle Association ("SRA"), a mutual aid organization. Jasha alleges that "the relation of mutual aid and firearms has necessarily led to concerns" by Jasha and his family "that such supposed 'assistance' could come in the form of individuals acting violently against . . . them." *Id.* at ¶ 57; Ex. H. The following month, Higgins posted an image of herself that is geotagged in Long Island, which is 50 miles from the Tull family home. *Id.*

**B.     Allegations in Herman and Lekha's Complaint**

Herman and Lekha make the following additional allegations in their complaint: Herman is a former professor who lives in Princeton. He is married to Lekha and is Jasha's father. Lekha is a Doctor of Dental Surgery and founder and principal of DenTull, a dental practice in Princeton. She is Jasha's mother. Compl. ¶¶ 1, 2.[4]

In April 2017, after Jasha and Higgins's romantic relationship ended, Higgins sent Herman an email accusing him of "making a demeaning statement" to Jasha "about her manner of speech." She accused him of "a lack of sensitivity and admonish[ed] him for the alleged statement he never made." *Id.* at ¶ 23. Higgins sent Herman a number of subsequent emails. *Id.* at ¶¶ 24-26. In one,

_____

[4] All citations to the "complaint" in this section are from the complaint filed by Herman and Lekha.

United States District Court
Northern District of California

Higgins "berated" Herman for "providing the body of their email communications to C3 Management." *Id*. at ¶ 27.

Throughout 2019, Herman received several direct messages at his personal Instagram account. The messages were from the @evidenceagainstspacejesus, @caelila, and @caelislaysdragons accounts and alleged that Jasha was a "serial rapist" and had substance abuse issues and should be compelled to receive treatment. *Id*. at ¶ 29. Herman "reacted to [the messages] with disbelief and distress." *Id*. Herman alleges that Higgins's statements "have caused him significant emotional distress and created ongoing worry and apprehension that perceived wrongs will be addressed extralegally, that is, through continued harassment, cyberbullying and stalking as well as through the commission of violence against him." *Id*. at ¶ 30.

As to Lekha, she alleges that after the end of Jasha and Higgins's relationship, she "was inundated with text messages and other communications from [Higgins]" using a pseudonym. In these communications with Lekha, Higgins accused Jasha of violating and raping her, but also suggested that Higgins sought to re-establish a relationship with Jasha. Lekha "communicated with two of the three witnesses to Jasha and [Higgins's] second sexual encounter, who denied that Jasha . . . had done anything nonconsensual such as continue intercourse without consent," and denied another of Higgins's accusations against Jasha. *Id*. at ¶ 31. After communicating with the witnesses, Lekha then contacted Higgins "to determine why [Higgins] would seek to reestablish a romantic relationship with an individual she also asserted had wronged her in the alleged matter." *Id*. at ¶ 32. After this contact between Higgins and Lehka, Higgins continued to send text messages to Lekha alleging that Jasha had substance abuse problems and "ongoing and unaddressed mental health issues," and that he required treatment for these conditions. *Id*. at ¶ 33.

Higgins then began making "false and threatening statements" about Lekha and her family on social media accounts. These included statements that Herman and Lekha "had enabled the alleged behavior of Jasha . . . as being an alleged sexual predator." *Id*. at ¶ 34. Higgins also began falsely stating that Lekha and her dental practice "had improperly charged patients for tests for COVID-19[.]" *Id*. at ¶ 35. Lekha did not specifically identify the allegedly defamatory

United States District Court
Northern District of California

statements, and instead set forth the following comments posted by @evidenceagainstspacejesus

tagging Lekha's Instagram account, @lekhatull:

> @lekhatull should I post the stories from Hannah, Sam, Austin, Jay, and even Jasha about how badly you abuse Joyce? I have many texts and emails describing how you have treated her like dirt from day 1 simply because she didn't come from a wealthy family; and ever since she and Janak got engaged, you've apparently been telling anyone who will listen that Joyce is only after your family's money. Everyone who knows Joyce knows she is an angel who most parents would be thrilled to have marrying their son. Everyone can see how real their love is. But you don't care. because you don't care about love. You only care about power, status, hierarchy, and most of all, money. That's why you charge people for covid tests at your office, WHEN COVID TESTS ARE FREE. The first thing jasha ever said to me about you was "she hates Joyce because Joyce came from a poor family." I thought he was exaggerating, but you proved it to be true time and time again, and you have apparently only gotten more vocal and aggressive in your campaign to destroy their relationship. Every. Single. Person who knows Jasha well said they blame you for the monster he became, because you are his biggest enabler BY FAR. For his entire life, you taught him that he never has to consequences for his actions. You never taught him right from wrong. You only taught him to dominate, manipulate, profit, and exploit. He never learned how to take responsibility for his actions because you and Herman never taught him how. You spoiled him ROTTEN. I actually have a lot of compassion for him because I don't know how anyone who was raised by you could avoid turning out the way he did.

Compl. ¶ 49, Ex. G at ECF pp. 8-10.

Lekha alleges that she also became aware that Higgins had acquired her patients' private contact information and posted their names publicly, "thus violating their medical rights privacy" and exposing Lekha to potential liability. *Id*. at ¶ 36.

Lekha alleges that her attempts to block Higgins on social media have led Higgins and Doe Defendants to create new accounts under aliases "in order to continue their wrongful acts against" Lekha. *Id*. at ¶ 37. Lekha alleges that Higgins's false statements about Lekha "have caused her significant emotional distress and created an ongoing apprehension that perceived wrongs will be sought to be redressed extralegally . . . through continued defamation, harassment, cyber-bullying and stalking as well as through the commission of violence against her." *Id*. at ¶ 38.

Herman and Lekha allege that as a result of Higgins's conduct and statement, they have reduced or ceased their activity on social media despite its utility, especially during the COVID-19 pandemic. *Id*. at ¶ 45. Herman is active in his community and has "been denied a way to keep in

touch with and witnessing the progression of the lives of his former students," which has "imposed a significant burden on what should otherwise be a period of well-earned professional and personal satisfaction as well as rest, reflection, and acknowledgment for his service to his students and his community." *Id.* at ¶ 47.

Lekha's "inability to engage on social media . . . has led to ongoing emotional distress and concern that her business and reputation have been and will stay negatively impacted" by Higgins's conduct. *Id.* at ¶ 48. Additionally, Higgins and Doe Defendants have used the @evidenceagainstspacejesus account "to make false statements directly and indirectly to" Lekha's personal Instagram account. These statements include that Lekha "has 'abused' her son Dr. Janak Tull's fiancé Joyce" and that Lekha "raised [Jasha] to be a 'monster' and 'only taught him to dominate, manipulate, profit, and exploit.'" *Id.* at ¶ 49.

## C.    Plaintiffs' Claims

Jasha brings the following claims against Higgins: 1) defamation—libel; 2) harassment in violation of California Code of Civil Procedure section 527.6; and 3) stalking in violation of California Code of Civil Procedure section 1708.7.

Lekha and Herman bring claims for 1) harassment in violation of California Code of Civil Procedure section 527.6; and 2) stalking in violation of California Code of Civil Procedure section 1708.7. Lekha also brings a separate claim for defamation—libel.

## D.    Procedural History

Plaintiffs filed their complaints on March 5, 2021. The court related the cases on March 25, 2021. Higgins now moves to dismiss the complaints and to strike portions of them. After Higgins filed the instant motions, the court ordered Plaintiffs to file one combined brief in opposition to the motions to dismiss and Higgins to file one brief in reply to the combined opposition brief. The court also ordered Plaintiffs to file one combined brief in opposition to the motions to strike and ordered Higgins to file one brief in reply to the combined opposition brief. [Docket No. 28 in Case No. 21-cv-01566; Docket No. 28 in Case No. 21-cv-01574.]

United States District Court
Northern District of California

9

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94 (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief."  *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted).  A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion.  *Lee*, 250 F.3d at 688 (citation and quotation marks omitted).  However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack v. S. Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26.  The court need not accept as true allegations that contradict facts which may be judicially noticed.  *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**B.     Motion to Strike**

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  A matter is "immaterial" when it "has no essential or important relationship to the claim for relief or the defenses being pleaded, while '[i]mpertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question."  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).  The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that arises from litigating spurious issues by dispensing of those issues before trial, and such a motion may be appropriate where it will streamline the ultimate resolution of the action.  *Fantasy*, 984 F.2d at 1527–28.  "A motion to strike should be granted if it will eliminate serious risks of prejudice to the moving party, delay, or confusion of issues."  *Lee v. Hertz Corp.*, 330 F.R.D. 557, 560 (N.D. Cal. 2019) (citing *Fantasy*, 984 F.2d at 1528).  "Motions to strike are regarded with disfavor [ ] because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings."  *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014) (quotation omitted).  "The grounds for a motion to strike must appear on the face of the pleading under attack," and "the Court must view the pleading under attack in the light more favorable to the pleader when ruling upon a motion to strike."  *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 301 F.R.D. 487, 489 (C.D. Cal. 2014) (citations omitted).

**III.    EVIDENTIARY ISSUES**

Higgins submitted the same two exhibits with each of her motions to dismiss.  [Docket Nos. 24-1, 24-2 in Case No. 21-cv-01566; Docket Nos. 25-1, 25-2 in Case No. 21-cv-01574.] Exhibit 1 appears to be a copy of a September 5, 2016 email from Herman to Higgins, Lekha, and Jasha attaching a photograph of four individuals on a beach.  It is not authenticated.  Exhibit 2 is an April 28, 2021 declaration by Christina Renee LaCoste in which LaCoste describes a sexual assault by Jasha in 2017 and later communications between LaCoste and Higgins.  Plaintiffs object to both exhibits.  [Docket No. 31, Case No. 21-cv-01566; Docket No 31, Case No. 21-cv-

01574.][5]

In ruling on a Rule 12(b)(6) motion, a court ordinarily may not consider matters outside the pleadings without converting a motion to dismiss into a motion for summary judgment. *See Lee*, 250 F.3d at 688. "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Incorporation by reference is "a judicially-created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002.

As to Exhibit 1, Higgins states that Herman's email attaching the photograph is part of Exhibit F to the complaint (Ex. F at ECF p. 3), but that the email in Exhibit F is incomplete and does not contain the photograph that was transmitted by the email. Mot. to Dismiss in Case No. 21-cv-01566 at 7 n.5; Mot. to Dismiss in Case No. 21-cv-01574 at 7 n.4. Higgins apparently submits Exhibit 1 to provide a complete version of the email, but she neither authenticates the document nor offers any authority for the court's consideration of it. Her version of the email is not attached to either of the complaints. It is also not incorporated by reference in the complaints, because Plaintiffs do not "refer[ ] extensively to the [email]" and the email does not "form the basis" of Plaintiffs' claims. *See Khoja*, 899 F.3d at 1002 (incorporation by reference is appropriate "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." (quotation and citation omitted)). Moreover, it is not subject to judicial notice. Accordingly, the court will not consider Exhibit 1 to Higgins's motion to dismiss.

As to the LaCoste declaration, Higgins does not set forth the basis for the court's consideration of this document on a motion to dismiss. The declaration is not attached to the

---

[5] Plaintiffs filed their objections in a separate seven-page brief in violation of Local Rule 7-3(a), which provides that "[a]ny evidentiary . . . objections to the motion must be contained within the brief or memorandum" in opposition. The court will consider the objections, however, because even if Plaintiffs' briefs had contained the objections, they would have stayed within the page limits set by the court. The court denies Plaintiffs' objections as moot because it separately determines that Higgins's exhibits cannot be considered.

United States District Court
Northern District of California

1    complaints or incorporated by reference into the complaints.  It is also not subject to judicial

2    notice.  The court cannot consider the LaCoste declaration in ruling on these motions.

3    **IV. MOTIONS TO DISMISS**

4       **A.  Defamation Claims**

5          **1.    Jasha's Defamation Claim**

6          Jasha's defamation claim is based on fourteen public statements that Higgins posted on

7    social media platforms.  Jasha asserts that through these statements Higgins accuses Jasha of

8    "commit[ing] various criminal or otherwise wrongful acts, including rape, statutory rape, sexual

9    abuse, emotional abuse, and knowingly furnishing illicit substances to underage persons."  Jasha's

10   Compl. ¶ 67; *see id*. at ¶¶ 41-45, 47-55 (detailing the statements at issue).  Higgins argues that the

11   defamation claim must be dismissed because Jasha is a public figure and therefore must allege that

12   Higgins made the challenged statements with actual malice, which he has not done.

13          Under California law, a plaintiff bringing a defamation claim must establish: "(a) a

14   publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural

15   tendency to injure or that causes special damage."  *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007)

16   (quotation marks and citation omitted).  Individuals who are considered public figures must also

17   prove that the defendant made the allegedly defamatory statements with "actual malice."  *Makaeff*

18   *v. Trump Univ., LLC*, 715 F.3d 254, 265 (9th Cir. 2013).  Public figures include "artists, athletes,

19   business people, dilettantes, anyone who is famous or infamous because of who he is or what he

20   has done."  *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 888 (9th Cir. 2016) (quoting

21   *Cepeda v. Cowles Magazines & Broad., Inc.*, 392 F.2d 417, 419 (9th Cir. 1968)).  An individual

22   may be a public figure for all purposes or in limited contexts.  *Id*.

23          Jasha does not meaningfully dispute that he must establish actual malice for purposes of

24   his defamation claim but argues that the complaint satisfies this requirement.  Opp'n 3 ("[t]o the

25   extent the 'actual malice' requirement is applicable to Jasha Tull, it is more than amply met.").[6]

26          Actual malice requires a showing that a statement was made "with knowledge that it was

27

28   [6] Since the parties do not dispute that Jasha must plead actual malice, the court need not determine
     whether he is a public figure for all purposes or for a limited purpose.

United States District Court
Northern District of California

false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). "To demonstrate reckless disregard of the truth, [a plaintiff] must show by clear and convincing evidence that [the speaker] 'entertained serious doubts as to the truth' of her statements." *Makaeff*, 715 F.3d at 270 (quoting *Gertz*, 418 U.S. at 331-32). "The existence of actual malice turns on the defendant's subjective belief as to the truthfulness of the allegedly false statement." *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1167 (2004) (citing *Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d 244, 257 (1984) ("the defendant's belief concerning the truthfulness of the publication is the crucial issue")). "Actual malice may not be inferred solely from evidence of personal spite, ill will, or bad motive"; instead, these factors, along with a failure to investigate the truthfulness of a statement and reliance on sources known to be unreliable or biased against the plaintiff, "may provide circumstantial evidence of actual malice in appropriate cases . . . depending on the extent to which they reflect on the defendant's subjective state of mind." *Annette F.*, 119 Cal. App. 4th at 1169 (citations omitted); *Reader's Digest*, 37 Cal. 3d at 258. Courts emphasize that evidence of "negligence, of motive and of intent . . . is relevant only to the extent that it reflects on the subjective attitude *of the publisher*." *Reader's Digest*, 37 Cal. 3d at 257-58 (emphasis added). Additionally, where a speaker "republish[es] a third party's allegations, mere proof of [their] failure to investigate the veracity of such allegations does not establish reckless disregard for the truth." *Makaeff*, 715 F.3d at 270 (citing *Gertz*, 418 U.S. at 332).

"To determine whether a plaintiff adequately pleads actual malice, the court must 'disregard the portions of the complaint where [the Plaintiff] alleges in a purely conclusory manner that the defendants had a particular state of mind in publishing the statements as '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' are insufficient to support a cause of action." *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017) (quoting *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703-04 (11th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678)). Pleading actual malice is a "demanding burden" and "general allegations that a defendant should have known or should have investigated the truth of his or her statements do not adequately plead actual malice."

*Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014) (citations omitted); *see also McFarlane v. Esquire Mag.*, 74 F.3d 1296, 1308 (D.C. Cir. 1996) ("The standard of actual malice is a daunting one.").

The complaint makes one allegation regarding Higgins's state of mind in making statements about Jasha and retweeting statements by others about him:

> Defendants, and each of them, have made public statements on social media platforms stating that [Jasha] has committed various criminal or otherwise wrongful acts, including rape, statutory rape, sexual abuse, emotional abuse, and knowingly furnishing illicit substances to underage persons. *Defendants knew, or had reasonable cause to believe, that [Jasha] had not done so, as Defendants knew, or had reasonable cause to believe, that [Jasha] did not commit said acts.* Despite this, Defendants, and each of them, have continued to make these statements which they know or had reasonable cause to believe were false.

Jasha's Compl. ¶ 67 (emphasis added). This allegation lacks supporting details and is entirely conclusory. It fails to satisfy the demanding burden of pleading actual malice. *See Resolute Forest*, 302 F. Supp. 3d at 1018 ("States of mind may be pleaded generally, but a plaintiff still must point to details sufficient to render a claim plausible." (quoting *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013))).

According to Jasha, his complaint alleges that Higgins is "propagating falsehoods with reckless disregard of the truth" regarding his "nonconsenting sexual encounters with third parties," being a pedophile and a psychopath, providing illicit substances to minors, and committing statutory rape. Opp'n 7. This is incorrect, as the complaint contains no allegations to support that Higgins "propagate[ed] falsehoods with reckless disregard of the truth" regarding any subject. Jasha further argues that Higgins "is defaming him by stating that he had sex with her without her consent, which [Jasha] asserts is a lie that she has personal knowledge of the falsity of." *Id*. This also is not alleged in the complaint. As discussed above, the complaint makes the sole conclusory allegation that Higgins knew or should have known that the statements are false (Jasha's Compl. ¶ 67), but does not allege any facts to support a plausible inference that Higgins made the statements with actual malice.

Jasha also contends that he has set forth both direct and circumstantial evidence of actual

United States District Court
Northern District of California

15

malice.  He points to portions of his declaration in which he purportedly denies the truthfulness of some of the statements at issue and calls them lies.  Opp'n 5-7; Compl. Ex. A (Jasha Tull Decl., Mar. 4, 2021) ¶¶ 75-79, 83-85.   Citing to exhibits attached to the complaint is not a substitute for asserting actual allegations about Higgins's "attitude or state of mind with respect to the veracity" of the statements she posted or retweeted, *see Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1579 (2005).  It is not the court's responsibility to speculate about potential inferences that Jasha might be trying to make.  It is Plaintiff's duty to assert clear allegations in his pleading.

Moreover, Jasha appears to conflate falsity with malice.  He must allege falsity as an element of his defamation claim, but falsity alone does not establish actual malice.  To plead actual malice, Jasha must allege facts to support that Higgins made the defamatory statements with knowledge of their falsity, or reckless disregard of their truth or falsity.  "[T]here is a significant difference between proof of actual malice and mere proof of falsity."  *Bose Corp. v. Consumers Union of U.S. Inc.,* 466 U.S. 485, 511 (1984).  *See also Ampex*, 128 Cal. App. 4th at 1579 (holding that plaintiffs' "declarations, simply summarizing certain comments and repeating that they were false, were insufficient to establish a prima facie showing of constitutional malice").

Jasha next argues that the complaint alleges circumstantial evidence of actual malice.  He points to allegations about the "ceaseless parade of threats and acknowledgment of threats" that Higgins has "imposed upon him for over four and a half years."  Opp'n 8.  These include allegations that Higgins traveled to Plaintiffs' vacation home and threatened to "destroy him personally and professionally"; was distraught by the end of the relationship; told him she wished he was dead, that she hated him, and that she wanted to "murder" him; and threatened him.  *Id*. at 8-9 (citing Compl. ¶¶ 15, 18, 20, 22, 25).  This is also insufficient.  Actual malice "has nothing to do with bad motive or ill will," and "may not be inferred alone from evidence of personal spite, ill will or intention to injure on the part of the writer."  *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 n.7 (1989).  To be sure, evidence of "anger and hostility toward the plaintiff . . . may, in an appropriate case, indicate that the publisher . . . had serious doubts regarding the truth of [their] publication," but "such evidence is relevant *only to the extent that it reflects on the subjective attitude of the publisher*."  *Reader's Digest*, 37 Cal. 3d at 258 (emphasis

added).  The complaint alleges no connection between Higgins's alleged ill will or hatred toward

Jasha and her awareness that each of her statements were false or that she entertained serious

doubts about their truth.  *See Fletcher v. San Jose Mercury News*, 216 Cal. App. 3d 172, 186

(1989) ("For appellant's argument to satisfy the *New York Times* standard, appellant must link [the

reporter's] statements [about the plaintiff, including that he was a 'crook' and a 'crooked

politician'] to [the reporter's] awareness of probable falsity.").

　　　　Jasha also points to two statements by Higgins that he contends are "arguably direct

evidence of actual malice" as they are threats to "falsely accuse him of sexual abuse" and to

destroy his career.  Opp'n 9-10.  Only one of the statements is alleged in the complaint.  Higgins

stated, "Karmas [sic] a bitch . . . wrongly accuse someone of sexual abuse and never apologize for

it, and you may end up getting wrongly accused yourself."  Compl. ¶ 23; Ex. E at ECF P. 26.

Jasha contends that this statement supports an inference that Higgins had knowledge of the falsity

of her claims about him.  However, the statement is not tethered to any allegations about its timing

or context that would support such an inference.[7]

　　　　In sum, the court concludes that Jasha has failed to satisfy the "demanding burden" of

alleging actual malice as to the statements posted by Higgins about him.  Accordingly, the court

dismisses Jasha's defamation claim for failure to adequately allege actual malice with leave to

amend.  *See, e.g., Resolute Forest Prod., Inc. v. Greenpeace Int'l*, No. 17-CV-02824-JST, 2019

WL 281370, at *8 (N.D. Cal. Jan. 22, 2019) (concluding that "it is proper to dismiss a complaint

when the Court concludes the plaintiff fails to plead actual malice as a matter of law." (collecting

cases)); *Resolute Forest*, 302 F. Supp. 3d at 1018-20 (dismissing defamation claims with leave to

amend for failure to plead actual malice "with the requisite specificity").

### 2.　　Lekha's Defamation Claim

　　　　Lekha's defamation claim is based on two types of allegedly false statements: 1) that

---

[7] The second statement, which appears only in an exhibit to the complaint, is "Yes it is I, @caelila, out to destroy Jasha's career . . . [eyeroll emoji]," and was apparently posted on the profile page of the @evidenceagainstspacejesus Instagram account.  Ex. H at ECF p. 1.  Jasha omits and does not address the eyeroll emoji that appears at the end of the statement, which may signal a lack of sincerity.  *See* Eric Goldman, *Emojis and the Law*, 93 Wash. L. Rev. 1227, 1241 (2018).

United States District Court
Northern District of California

Lekha "has knowledge of various wrongful acts, including criminal acts of a sexual nature, that have been allegedly committed by her son, and that [Lehka's] words and acts have enabled the commission or some lack of accountability for said acts"; and 2) that Lekha "has wrongly and/or unlawfully charged patients for COVID-19 testing." Lekha/Herman Compl. ¶¶ 58, 59.

The complaint does not identify the specific statements that are allegedly defamatory. *See id*. Instead, it quotes a lengthy social media post by Higgins that contains many statements about various subjects, leaving the court to speculate about the particulars of Lekha's defamation claim. *Id*. at ¶ 49(a). This is insufficient. In *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Bd. of Culinary Workers,* 542 F.2d 1076, 1082-83 (9th Cir. 1976) the Ninth Circuit held in an antitrust case that "in any case, whether antitrust or something else, where a plaintiff seeks damages or injunctive relief, or both, for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." The Ninth Circuit recently held that "assuming *Franchise Realty* imposes a heightened pleading requirement in defamation cases . . . a defamation complaint is sufficient under *Franchise Realty* when it 'lists the precise statements alleged to be false and defamatory, who made them and when.'" *Miller v. Sawant*, 18 F.4th 328, 337 n.9 (9th Cir. 2021) (quoting *Flowers v. Carville*, 310 F.3d 1118, 1131 (9th Cir. 2002)).

Lekha's complaint fails to meet this standard. This failure is particularly problematic because Higgins argues that the allegedly defamatory statements "constitute nonactionable opinions." Mot. 8-10. The court cannot analyze this argument without a clear understanding of the statements that Lekha claims are actionable.[8]

---

[8] Whether a statement communicates a fact or a nonactionable opinion is a question of law for the court to decide, *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 970 (N.D. Cal. 2013), *aff'd,* 609 F. App'x 497 (9th Cir. 2015), and in making that assessment, the court must examine "the totality of the circumstances in which [the statement] was made" using the following three factors:

> (1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is

18

Accordingly, Lekha's defamation claims are dismissed with leave to amend to specifically identify the statements at issue.

### B.    Civil Harassment Claims

#### 1.  Jasha's Harassment Claim

Jasha's second claim is for harassment in violation of California Code of Civil Procedure section 527.6.  The statute defines harassment as follows:

> "Harassment" is unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner.

Cal. Civ. Proc. Code § 527.6(b)(3). "Course of conduct" is defined as:

> [A] pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or email. Constitutionally protected activity is not included within the meaning of "course of conduct."

Cal. Civ. Proc. Code § 527.6(b)(1).

Jasha alleges that Higgins has "engaged in recurring and unwanted contact with [his] personal and professional phone numbers, email addresses, and/or social media accounts," and "been subject to numerous unwanted communications from [Higgins] . . . including text messages, phone calls, emails, and social media connections, which seek to falsely accuse him of being a pedophile, a rapist, a perpetrator of sexual and emotional abuse, and of giving illicit substances to minors with knowledge."  Compl. ¶¶ 79-80.  He further alleges that Higgins has undertaken this course of conduct for more than 4 ½ years, and that the "conduct has served no legitimate purpose,

---

susceptible of being proved true or false.

*Lieberman v. Fieger*, 338 F.3d 1076, 1080 (9th Cir. 2003) (citation omitted).  Given the complaint's failure to identify the precise statements that Lekha alleged to be false and defamatory, the court is unable to evaluate whether Lekha's defamation claim challenges nonactionable opinions.

serving only to make false accusations about [Jasha]." *Id*. at ¶¶ 82-83.

Higgins's sole argument is that Jasha failed to state a claim for harassment because he has not adequately alleged that the conduct at issue "serves no legitimate purpose." Mot. 11. "Legitimacy of purpose negates harassment." *Byers v. Cathcart*, 57 Cal. App. 4th 805, 812 (1997) (discussing section 527.6(b)). According to Higgins, the alleged course of conduct, "as evidenced from the communications themselves, focuses almost entirely on [her] efforts to educate and seek accountability from sexual assault offenders for herself and others and to clarify and understand the disparaging remarks that [Jasha] was making about [Higgins]." Mot. 11.

Higgins's argument is without merit because it ignores Jasha's allegations that her private and public statements to and about him are false. *See* Jasha's Compl. ¶¶ 40-45, 47-55, 67, 80. Higgins essentially asks the court to adopt her interpretation of the motivations behind her statements and contact with Jasha. It may be that "[s]eeking recourse for perceived wrongs" and "[i]nforming the public and encouraging an investigation into allegedly wrongful conduct" constitute legitimate purposes under section 527.6(b). *See* Reply 12 (citing *Hanna v. Moreira*, No. E070310, 2019 WL 3933564, at *3 (Cal. Ct. App. Aug. 20, 2019), and *Principe v. Curry*, No. 817CV00608JLSKESX, 2018 WL 1406912, at *3 (C.D. Cal. Jan. 3, 2018)). This is a factual dispute which cannot be resolved at the pleading stage. Accordingly, Higgins's motion to dismiss Jasha's harassment claim is denied.

### 2. Herman & Lekha's Harassment Claims

Herman alleges that Higgins has "engaged in recurring and unwanted contact with [his] personal and professional phone numbers, email addresses, and/or social media accounts," and that he has "endured numerous unwanted communications from [Higgins] . . . including emails and social media communications, which seek to falsely accuse him of demeaning her and further those statements through individuals familiar to him." Compl. ¶¶ 69-70. He further alleges that Higgins "repeatedly blind carbon copied [him] on her litany of emails to Jasha Tull's management company, evidencing a desire to show control over his son's life and livelihood." *Id*. at ¶ 70. The content of these communications "falsely accuse him of demeaning Defendant Higgins and of improperly sharing her personal information, as well as falsely alleging that his son Jasha Tull has

*United States District Court*
*Northern District of California*

substance abuse and other mental health problems . . ." *Id.* at ¶ 72.  He further alleges that this conduct "has served no legitimate purpose, only making false accusations about [Herman] and [Jasha], and creating substantial emotional distress . . . based on continually subjecting [Herman] to these false accusations . . ." *Id.* at ¶ 74.

Lekha alleges that she "has endured continuing and numerous unwanted communications from [Higgins] . . . which make various disparaging and false statements about her conduct as the parent of her son," as well as "disparaging and false statements about the conduct of her dentistry practice including false allegations of taking pecuniary advantage of the COVID-19 pandemic." *Id.* at ¶¶ 75-76.  Lekha further alleges that Higgins "has variously berated [Lekha] by text message, sending at least twenty text messages at one time, demanding that [Lekha] accept her false statements despite the lack of corroboration or independent evidence," including accusations that Jasha is a "severe drug addict," "harassed unnamed individuals who reported it to Jasha's management company, [and] of allegedly committing unspecified grave harms when 'blacked out.'" *Id.* at ¶ 78.  She alleges that this conduct has served no legitimate purpose.  *Id.* at ¶ 81.

As with Jasha's harassment claim, Higgins moves to dismiss the claim by Herman and Lekha solely on the ground that the communications themselves identify "legitimate purposes," including concern for substance abuse, the availability of free COVID-19 testing, seeking accountability and preventing sexual assaults, and keeping her private information private.  Mot. 14-15.  Again, this ignores the allegations in the complaint that the substance of Higgins's communications to Herman and Lekha were false.  *See* Compl. ¶¶ 70, 72, 75, 76, 79.  Factual disputes cannot be decided on the pleadings.  The motion to dismiss Herman and Lekha's harassment claims is therefore denied.

### C.     Civil Stalking Claims

#### 1.  Jasha's Stalking Claim

Jasha's third claim is for stalking in violation of California Code of Civil Procedure section 1708.7.  An individual is liable for the tort of stalking when a plaintiff "proves all of the following elements of" the statute:

(1) The defendant engaged in a pattern of conduct the intent of which

was to follow, alarm, place under surveillance, or harass the plaintiff. . . .

(2) As a result of that pattern of conduct, either of the following occurred:

(A) The plaintiff reasonably feared for his or her safety, or the safety of an immediate family member . . .

(B) The plaintiff suffered substantial emotional distress, and the pattern of conduct would cause a reasonable person to suffer substantial emotional distress.

[and]

(3) One of the following:

(A) The defendant, as a part of the pattern of conduct specified in paragraph (1), made a credible threat with either (i) the intent to place the plaintiff in reasonable fear for his or her safety, or the safety of an immediate family member, or (ii) reckless disregard for the safety of the plaintiff or that of an immediate family member.  In addition, the plaintiff must have, on at least one occasion, clearly and definitively demanded that the defendant cease and abate his or her pattern of conduct and the defendant persisted in his or her pattern of conduct unless exigent circumstances make the plaintiff's communication of the demand impractical or unsafe.

(B) The defendant violated a restraining order . . . .

Cal. Civ. Code § 1708.7(a).

In other words, a plaintiff bringing a stalking claim must establish three elements:

First, a plaintiff must show that the defendant was engaged in a pattern of conduct with "the intent to follow, alarm, or harass the plaintiff."  Second, a plaintiff must show that, as a result of the defendant's conduct, the plaintiff "reasonably feared for his or her safety, or the safety of an immediate family member."  Alternatively, a plaintiff may plead that she suffered "substantial emotional distress," which a reasonable person would also have suffered given the defendant's pattern of conduct.  Third, a plaintiff must show that the defendant made a credible threat intending to place plaintiff in "reasonable fear for his or her own safety," and that the defendant persisted despite the fact that on at least one occasion, plaintiff made clear that the "defendant cease and abate his or her pattern of conduct."

*Blazheiev v. Ubisoft Toronto Inc.*, No. 17-CV-07160-EMC, 2018 WL 3417481, at *7 (N.D. Cal. July 13, 2018) (quoting Cal. Civ. Code § 1708.7) (internal citations omitted).  The statute defines "credible threat" as follows:

"Credible threat" means a verbal or written threat, including that

communicated by means of an electronic communication device, or a threat implied by a pattern of conduct, including, but not limited to, acts in which a defendant directly, indirectly, or through third parties, by any action, method, device, or means, follows, harasses, monitors, surveils, threatens, or interferes with or damages the plaintiff's property, or a combination of verbal, written, or electronically communicated statements and conduct, made with the intent and apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family.

Cal. Civ. Code § 1708.7(b)(2).

In relevant part, Jasha alleges that Higgins's "repeated and unwanted communications were made with the intent to harass [Jasha] in order to alarm, annoy, and torment [him]." Compl. ¶ 88. He further alleges that the communications have caused him "reasonable fear for the safety of his family, including his parents and brother" and for his own personal safety. The communications, in the context of Higgins's "threats . . . to 'ruin' [Jasha], escalating public rhetoric made against him and his family, and [Higgins's] recent social media post with a firearm, have established and maintained in [him] a reasonable fear for his personal safety and that of his family." *Id*. at ¶ 90.

Higgins moves to dismiss Jasha's stalking claim on the grounds that he does not plausibly allege either a pattern of conduct with the intent to harass Jasha (element one) or a credible threat to his safety (element three). Mot. 13.

As to the first argument, the statute requires Jasha to show a "pattern of conduct the intent of which was to follow, alarm, place under surveillance, or harass" him. Cal. Civ. Code § 1708.7(a)(1). Higgins argues that the alleged course of conduct "focuses almost entirely on [her] efforts to educate and seek accountability from sexual assault offenders for herself and others and to clarify and understand the disparaging remarks that [Jasha] was making about" her. Mot. 13. Therefore, she argues, Jasha's allegations that her conduct did not have a legitimate intent but served only to harass him is not plausible. *Id*. As discussed above in connection with the harassment claims, Higgins's argument fails because the question of Higgins's intent is disputed between the parties and cannot be decided at the pleadings stage.

As to the second argument, the statute requires Jasha to establish that Higgins "made a credible threat with either (i) the intent to place [him] in reasonable fear for his . . . safety, or the

United States District Court
Northern District of California

safety of an immediate family member, or (ii) reckless disregard for" Jasha's safety or that of an immediate family member.  Cal. Civ. Code § 1708.7(a)(3)(A).  Jasha notes his allegations that Higgins stated she "want[ed] to fucking murder" him, described him as her "enemy," and told him that "she would seek to destroy him personally and professionally" if he did not agree to renew their relationship, "all while knowing where he and his family lived, and before she publicly announced she owned a firearm."  Opp'n 18 (citing Compl. ¶¶ 15, 20, 90).  While these allegations may plausibly support the inference that Higgins's statements and post with a firearm placed Jasha in reasonable fear for his safety, he does not actually allege that Higgins made these statements and posted the photograph with the firearm *with the intent* to place him in reasonable fear.  *See Bolton v. City of Berkeley*, No. 19-CV-05212-WHO, 2019 WL 6250927, at *4 (N.D. Cal. Nov. 22, 2019) (finding that "[s]imply listing the number of encounters with the [defendants] is not enough" to plead that they "made a credible threat towards him *with the intent* to place him in reasonable fear" (emphasis in original)); *Blazheiev*, 2018 WL 3417481, at *8 ("there is no indication that Defendants *knowingly or willfully* sent the emails to harass Plaintiff" (emphasis in original)).  Accordingly, Jasha has failed to state a claim for stalking under section 1708.7.  The claim is dismissed with leave to amend.

### 2.    Herman & Lekha's Stalking Claims

Herman and Lekha allege that Higgins's communications have caused them "to be put in reasonable fear for their safety and that of their son, Jasha," and that her "ongoing harassing communications to [Lekha], in the context of [Higgins's] threats . . . to 'ruin' [Jasha], and escalating public rhetoric made against him directly, have established and maintained in [Herman and Lekha] a reasonable fear for their and [Jasha's] personal safety."  Compl. ¶ 89.  Further, they allege that Higgins's "public pronouncement of firearm ownership and recent proximity to Plaintiffs and their family have caused them to seriously fear that violent acts may be perpetrated by [Higgins], doe defendants, or unrelated third parties."  *Id.*

Higgins argues that Herman and Lekha's stalking claims must be dismissed for the same reasons as Jasha's; namely, that they do not plausibly allege either a pattern of conduct with the intent to harass them or a credible threat to the safety of Jasha, Herman, and/or Lekha.  Mot. 16.

24

The outcome mirrors the analysis of Jasha's stalking claim.  For the reasons discussed above, the court finds that Higgins's first argument is not well-taken because it asks the court to adopt Higgins's version of events at the pleading stage.  Higgins is correct, however, that the complaint fails to state a stalking claim because Herman and Lekha do not allege that Higgins acted with the intent to place them in reasonable fear.

Additionally, Higgins argues that Herman and Lekha have not stated a stalking claim because the statute requires them to establish that they "have, on at least one occasion, clearly and definitively demanded that [Higgins] cease and abate . . . her pattern of conduct and [Higgins] persisted in . . . her pattern of conduct unless exigent circumstances make [Herman and Lekha's] communication of the demand impractical or unsafe."  Cal. Civ. Code § 1708.7(a)(3)(A).  Higgins notes that the complaint fails to allege that Herman and Lekha "clearly and definitively demanded" that Higgins cease her conduct.  Mot. 17.  Herman and Lekha do not respond to this argument in their opposition and thus concede it.  Therefore, their failure to allege that they demanded that Higgins cease her conduct is an additional basis to dismiss the stalking claim.

Herman and Lekha's stalking claims are dismissed with leave to amend.

## V.  MOTIONS TO STRIKE

Higgins moves to strike the following six allegations in Jasha's complaint:

1. Paragraph 2, page 2, lines 8 through 10 "Plaintiff is informed and believes that Defendant Higgins was also acting under and/or utilizing the pseudonym or screen name '@sensualintelligence' on the 'onlyfans.com' platform."

2. Paragraph 48, page 13, lines 12 through 14, "On or about June 26, 2020, the Twitter account '@caelila' stated 'You're an actual, factual psychopath @spacejesus.' This is false and a lie, Plaintiff is not a psychopath."

3. Paragraph 49, page 13, lines 15 through 18, "On or about June 29, 2020, the Twitter account '@caelila' stated that 'Whatever personality disorder Trump has (is it psychosis? megalomania? just straight up soul-less?, jasha has it too. They operate the exact same way.' This false and a lie, Plaintiff does not have a personality disorder."

4. Paragraph 50, page 13, lines 19 through 23, "On or about July 3, 2020, the Twitter account

United States District Court
Northern District of California

1   '@caelila' retweeted a tweet from 'Dmoney0101' stating 'So disheartening to see

2   @bassnectar @spacejesus and @NahkoBear exposed as sexual predators all in one

3   week…' '@caelila''s adoption and promotion of this statement amounts to an assertion

4   that Plaintiff is a sexual predator, which is false and a lie."

5   5.   Paragraph 52, page 14, lines 1 through 4, "On or about July 5, 2020, the Twitter account

6   '@caelila' retweeted a tweet from '@deadsoonshawty' stating 'burnt all our pedophile

7   merch last night :) FUCK YOU @spacejesus.' Defendant Michaela Higgins/Caeli La's

8   retweet via '@caelila' amounts to an adoption and assertion Plaintiff is a pedophile, which

9   is false and a lie."

10  6.   Paragraph 54, page 14, lines 8 through 11, "On August 9, 2020, '@caelila' retweeted a

11  tweet from '@shambhalaaa888' stating that Plaintiff had raped Defendant Michaela

12  Higgins/Caeli La. '@caelila''s adoption and promotion of this statement amounts to an

13  assertion that Plaintiff raped Defendant Michaela Higgins/Caeli La, which is a lie."

14  Mot. to Strike Portions of Jasha's Compl. 2.

15    The first allegation at issue, in which Jasha references Higgins's OnlyFans.com

16  pseudonym, also appears in Herman and Lekha's complaint at paragraph 3 lines 16-18.  Higgins

17  moves to strike this allegation from Herman and Lekha's complaint.  Mot. to Strike Portions of

18  Herman/Lekha's Compl. 2.  She does not challenge any other portion of Herman and Lekha's

19  complaint in her motion to strike.

20    **A.  Reference to OnlyFans**

21    In identifying Higgins as a party, Jasha identifies her states of residency and identifies the

22  pseudonyms she uses on Instagram and Twitter.  Compl. ¶ 2.  He alleges on information and belief

23  that Higgins "was also acting under and/or utilizing the pseudonym or screen name

24  '@sensualintelligence' on the 'onlyfans.com' platform."  *Id*.  The complaint then references

25  statements and posts allegedly made by Higgins using her various pseudonyms on Instagram and

26  Twitter.  Jasha's Compl. ¶¶ 40-45, 47, 48-54.  Jasha further alleges that in December 2020, his

27  attorney transmitted letters to Twitter and Facebook, as the owner of Instagram, in which counsel

28  described the alleged harassment and defamation Plaintiffs "have endured from" Higgins.  *Id*. at ¶

United States District Court
Northern District of California

62.  Aside from the reference to OnlyFans.com in paragraph 2, the complaint never again refers to or mentions Higgins's alleged pseudonym on OnlyFans.com, and never alleges that any of the conduct challenged in this lawsuit occurred on or in connection with that platform.

Similarly, Herman and Lekha's complaint includes the allegation, "Plaintiffs are informed and believe that [Higgins] was also acting under and/or utilizing the pseudonym or screen name '@sensualintelligence' on the 'onlyfans.com' platform."  Herman/Lekha's Compl. ¶ 3.  Other than this allegation, their complaint does not refer to or mention Higgins's alleged pseudonym on OnlyFans.com.

Higgins argues that the court should strike the reference to her alleged pseudonym @sensualintelligence on OnlyFans.com in both complaints as immaterial, impertinent, and scandalous.  She contends that OnlyFans.com "is heavily stigmatized due to its overwhelming association with the sex industry, nude modeling, and pornography . . ."  Mot. to Strike Portions of Jasha's Compl. 2 n.2; Mot. to Strike Portions of Herman/Lekha's Compl. 2 n.2.  Higgins argues that the inclusion of the reference is immaterial and impertinent, since the complaint does not challenge any conduct arising in connection with OnlyFans.com or make any other allegations related to that platform.  She further argues that the inclusion of this reference is scandalous and serves only to smear her and her credibility by the association to sex work.

In response, Plaintiffs contend that Higgins has used a variety of aliases "to defame and harass" them, and that they have not yet determined whether the alleged defamation has occurred via the OnlyFans.com platform.  According to Plaintiffs, it is possible that Higgins has used the platform to defame them.  Therefore, they argue, the OnlyFans.com alias clearly bears on their claims.  Opp'n 3.  Additionally, they contend that the reference to OnlyFans.com stands on its own in the complaints, "without context, characterization, or ridicule," and that they do not cast aspersions on Higgins in connection with her presence on the platform.  *Id*. at 4.

The fact that Plaintiffs have not identified any defamatory statements occurring on the OnlyFans.com platform demonstrates its irrelevance to the issues in these cases.  To the extent that Plaintiffs eventually identify any such statements or conduct in connection with the platform in the future, they may move for leave to amend the complaints to add allegations about OnlyFans.com.

However, the court finds that the references to Higgins's OnlyFans.com account are presently immaterial and impertinent and should be stricken on that basis. *See Fantasy*, 984 F.2d at 1527 (a matter is "immaterial" when it "has no essential or important relationship to the claim for relief or the defenses being pleaded, while '[i]mpertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question.").[9]

**B.      Statements about Jasha's Mental Disorders & Retweets**

Higgins next asserts that the second and third references to Jasha's complaint set forth above, which contain statements that Jasha is a "psychopath" and has a "personality disorder," are immaterial to this matter as nonactionable opinions. Mot. 5. Additionally, she challenges the fourth through sixth references set forth above, which are retweets by the @caelila Twitter account of other users' tweets. According to Higgins, these references are immaterial because they are not actionable under federal law. *Id.* at 6. Essentially, Higgins argues that these references should be struck as immaterial because the statements at issue cannot form the basis for defamation claims as a matter of law. *See id.* at 5-7. If Higgins believes that such statements are not actionable, she should have made the argument with supporting authority as part of her motion to dismiss, not as a motion to strike. "A Rule 12(f) motion is not a proper method to procure dismissal of all or part of a complaint or counterclaim." *Oracle Corp. v. DrugLogic, Inc.*, 807 F. Supp. 2d 885, 896 (N.D. Cal. 2011) (citing *Consumer Sols. REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1020 (N.D. Cal. 2009)). Higgins's Rule 12(f) motion is an "attempt to have certain portions of [Jasha's] complaint dismissed," an action "better suited for a Rule 12(b)(6) motion . . . not a Rule 12(f) motion." *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). Accordingly, this portion of Higgins's motion to strike is denied.

**VI. CONCLUSION**

The motions to dismiss the complaints are granted in part and denied in part. Jasha's defamation claim is dismissed with leave to amend facts supporting actual malice. Jasha's stalking claim is dismissed with leave to amend to allege that Higgins engaged in conduct with the

---

[9] As the court finds that the reference in question is immaterial and impertinent, it need not reach Higgins's argument that it is also scandalous.

1   intent to place him in reasonable fear or facts supporting such an inference.

2          Lekha's defamation claim is dismissed with leave to amend to list the specific statements

3   alleged to be defamatory.  Herman and Lekha's stalking claims are dismissed with leave to amend

4   to allege that Higgins engaged in conduct with the intent to place them in reasonable fear or facts

5   supporting such an inference, and that they "clearly and definitively demanded" that Higgins cease

6   her conduct unless exigent circumstances made such communication impractical or unsafe.

7          Higgins's motion to strike portions of Jasha's complaint is granted in part and denied in

8   part.  The motion to strike with respect to Herman and Lekha's complaint is granted.

9          Within 14 days of the date of this order, Plaintiffs shall file amended complaints in

10  accordance with the court's order on the motions to dismiss.  Plaintiffs' amended complaints must

11  also omit the stricken references to OnlyFans.com.

12

13          **IT IS SO ORDERED.**

14  Dated: December 27, 2021



15

16                                                                  Donna M. Ryu
                                                          Judge Donna M. Ryu
17                                                        United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California